### JAMES CHRISTOPHER v. THE STATE.

No. 2131. Decided November 15, 1899.

**1. Keeping a Gaming Device—Information.**

An information which alleges that accused "did then and there unlawfully keep and exhibit a bank and gaming device for the purpose of gaming," etc., sufficiently alleges that said gaming device was kept and exhibited for the purpose of gaming.

**2. Same—Slot Machine.**

Our statute as to gaming devices (Penal Code, article 383) expressly declares that it is intended to include, in the inhibition against the exhibition for purposes of gaming, "any and all games which, in common language, are said to be played, dealt, kept, or exhibited." And article 384 provides that the enumeration of certain games in the statutes "shall not exclude any other properly within the meaning of the statute." Held, that a slot machine, shown to be a gaming device, is comprehended within the meaning of the statutes, although such device had not been invented when said statutes were passed.

**3. Same.**

A slot machine displayed for the purpose of obtaining bettors is not relieved from the operation of the statute because it is novel in character nor because it is an automaton which, after it is wound up, keeps and runs itself.

Appeal from the County Court of Bowie. Tried below before Hon. R. H. Jones, County Judge.

Appeal from a conviction for keeping and exhibiting a gaming device for the purpose of gaming; penalty, a fine of $25, and ten days imprisonment in the county jail.

Motion was made to quash the information because "it fails to charge that the alleged bank was kept or exhibited for the purpose of gaming." This motion was overruled.

The evidence shows that the "device" in question was what is known as an "automatic slot machine," operated by electricity. The machine was about five feet high and thirty inches wide. It was so constructed that there were five small holes or slots therein of five different colors, for the purpose of depositing a nickel in each or either slot; there was a wheel revolving which was divided off into five colors, viz., red, black, green, white, and yellow; there was a slot for each one of said colors, five in all. The machine was operated by placing a nickel in one or more or all of said slots, and then the person depositing the nickel by turning a crank or handle would start the wheel in motion; and if the wheel, when it ceased revolving, stopped on the same color as that in which the nickel was deposited the machine would pay, in nickels, the amount which said color called for, and which was marked or printed on the wheel of the machine, and an indicator showed the color on which it stopped. Red and black each called for 10 cents; white for 25 cents; green for 50 cents, and yellow for $1. If a person placed a nickel in all of the slots the machine would always pay something, not less than ten cents; but if the nickel was deposited in only one slot the machine would pay nothing unless the wheel stopped at that particular color. The machine was operated by an electric connection made inside the machine which set the wheel in motion when the nickel was deposited and the crank turned. The machine paid by letting the nickels run out of an aperture on one side and at the bottom of the machine into a cup placed there to receive them.

*Chas. F. Todd*, for appellant.—The information is insufficient to charge any offense, because it fails to charge that the alleged bank was kept or exhibited for the purpose of gaming. The information charges that appellant "kept and exhibited a bank and a gaming device for the purpose of gaming." This is simply charging that the bank or gaming device was a bank or device for the purpose of gaming; the clause "for the purpose of gaming" is descriptive of and qualifies the "bank" or "device." It is not equivalent to charging that appellant "kept and exhibited for the purpose of gaming, a bank," etc., which would have properly shown the purpose of keeping and exhibiting. It is no offense for a man to keep or even exhibit a gaming bank or device, unless he keeps or exhibits it for the sole purpose of gaming. The statute says, "if any person shall keep or exhibit for the purpose of gaming any gaming table or bank." Wills. Crim. Stats., art. 358; Wills. Forms,

244. The essence of the offense is the purpose for which the inhibited table or bank is kept. Pleaders should not experiment with transposition of words, which often change the sense and meaning.

The evidence fails to show that the "device" in question was such as either expressly or by implication is embraced within the inhibition of the law. It was not capable of being either "kept," "dealt," or "exhibited" for the purpose of gaming, being an automatic machine requiring neither keeper, dealer, nor exhibitor; was not in contemplation of the Legislature, because it had not been invented or conceived when the law was enacted.

It is said that when that illustrious jurist, Chief Justice Roberts, had the Stearnes' case, 21 Texas, 693, under advisement, he personally visited and carefully examined the modus operandi of all the gaming tables, banks, and devices in the city of Galveston, in order to assist him in discussing and deciding the case. At any rate, the opinion delivered by him in that case is a luminous and exhaustive exposition of the law applicable to gaming tables, banks, and devices, and still stands as such. He there sums up his conclusions as follows: "A game is a trial of skill or of chance, or of skill and chance, between two or more contending parties," etc. 21 Texas, 695.

"The leading elements of a gaming table or bank are: 1. It is a game according to the general definition. 2. It has a keeper, dealer, or exhibitor. 3. It is based on the principle of one against the many; the keeper, dealer, or exhibitor against the bettors, directly or indirectly. 4. It must be exhibited, that is, displayed, for the purpose of obtaining bettors." 21 Texas, 698, 699.

Tested by these rules and definitions, the machine here in question does not come within the inhibition of the law, because: First, it is not a game, because two or more contending parties are necessary to a game; party means person, not a machine. Second. It does not require a keeper, dealer, or exhibitor; it "shuffles, cuts, and deals" by electricity and pays if it loses and keeps if it wins, without requiring any dealer or keeper to pay and take. Third. If it is operated on the principle of "one against the many," it is one insensate, soulless, wooden automaton against the many idiots who have more nickels than brains.

It will not answer to say that it comes within the spirit of the law; a citizen must be convicted upon the plain intent and letter of the law, not upon intendment. The vice may be there, but there must be positive law prohibiting it and prescribing the penalty. It will scarcely be contended that the wise lawmakers enacting the law against keeping and exhibiting, for the purpose of gaming, any gaming table, bank, or device in about 1840, ever dreamed or conceived the idea that depraved but progressive human ingenuity could ever invent or construct such an automaton as the "slot machine." Yet since their invention equally wise legislators have met in solemn conclave and have not seen proper to so amend the law as to include this machine in

totidem verbis, though "keno," "chuck-a-luck," and "craps" have been deemed worthy to be honored with special mention eo nomine. It has even been suspected and whispered that some of those same wise legislators have been known to risk "the hazard of the die," and surreptitiously "drop a nickel in the slot" in the hope of realizing a good cigar wherewith to aid digestion after a sumptuous meal at the Driskill or the Avenue.

· If the "slot machine" is an evil (and I am not claiming that it is suitable for a Y. M. C. A.), then let the lawmakers define and punish the evil; but I contend that no man ought to be convicted and imprisoned for a crime, the possibility of committing which did not exist and was not contemplated when the law was passed. Penal laws are passed to meet and remedy then existing evils;. they can not be used as an "omnium gatherum" dragnet to catch and cover every imaginable possibility that may arise in the future. I contend that such a machine as shown in this case is not illegal, because no law has made it so, and it can not by implication be embraced in the law prohibiting and punishing other evils, though of an analogous character.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted on an information charging him with keeping and exhibiting a gaming device for the purpose of gaming, and his punishment assessed at a fine of $25, and imprisonment in the county jail for ten days, and he prosecutes this appeal.

Appellant made a motion to quash the information on the ground that it charged no offense, in this: that it does not allege that the alleged bank or device was kept or exhibited for the purpose of gaming. The language of the information in this connection is as follows: That appellant "did then and there unlawfully keep and exhibit a bank and a gaming device for the purpose of gaming," etc. We think it sufficiently alleges that said gaming device was kept and exhibited for the purpose of gaming.

Appellant contends that the gaming device is not one of the games prohibited by the statute, (1) because said slot machine is of recent invention, and was not known when our statutes on the subject were passed, and hence could not have been contemplated by the Legislature; (2) that the slot machine is a mere automaton, that keeps and runs itself, and is not the subject of being kept or exhibited for the purpose of gaming by any one.

With regard to the first contention, our statutes on the subject of gaming are very comprehensive. Article 382, Penal Code, enumerates a number of games, the exhibition of which for the purpose of gaming, is inhibited by statute. Article 383 is as follows: "It being intended by the foregoing article to include every species of gaming device known by the name of table or bank, of every kind whatever, this pro-

vision shall be construed to include any and all games which in common language are said to be played, dealt, kept, or exhibited." Article 384, after enumerating certain other games, provides: "But the enumeration of these games specially shall not exclude any other properly within the meaning of the two preceding articles." Article 385 provides that prosecutions can be maintained without giving the name or description of the gaming device in the indictment. Now, the fact that the slot machine, a full description of which is given in the statement of facts, had not been invented when said statutes were passed, affords no reason why the same is not comprehended within the meaning of said statutes. Our statutes on this subject were evidently framed not only to cover every gambling device then known, but all others that might be invented or become known.

As to whether this is one of the gaming devices inhibited by statute depends both on its construction and use. We gather from the statement of facts that, although the machine was an automaton, it was very skillfully constructed for the purpose of gaming. It not only received the bets, but decided them, and paid the money to itself or to the winner, without the intervention, for the time being, of the keeper or exhibitor. But we also gather that this machine was put in place and arranged and set in motion, and that when it was out of order it was rearranged and repaired, so it could operate. It was so skillfully constructed to serve its purpose that, according to the testimony, "the chances were against the outsiders as four in favor of the machine to one against it." It also occurs that the machine did not keep the money it won, but that the profits were divided between appellant and his copartner. We think this device comes fully within the meaning of the definition given by Judge Roberts in the Stearnes' case, 21 Texas, 693, so highly eulogized by appellant's counsel: (1) It embodies all the elements of a game of skill or of chance, or of skill and chance, with the chances, however, in favor of the exhibitor, which is usual in games of this character. (2) It has a keeper in the person of the owner or exhibitor, who operates and runs it for profit (3) It is based on the principle of the one against the many; the keeper or exhibitor, through the machine, indirectly receives the bets and pays out the money. (4) The machine is exhibited by the owner or exhibtor for the purpose of obtaining bettors. If not put in place and wound up, or arranged to run, it would not have displayed or exhibited itself. The purpose of its display is to obtain bettors. The fact that it is novel in character does not relieve it from the operation of the statute; for, in the language of Judge Roberts, "any change, cover, disguise, or subterfuge in any such ingredients, for the purpose of evasion, would not change the character of the game." In our opinion the statement of facts shows a gaming device such as is so aptly described in Stearnes' case, supra. The judgment is affirmed.

*Affirmed.*