**ADAMS et al. v. ANTONIO.**

No. 1796.

Court of Civil Appeals of Texas. Waco.
Oct. 10, 1935.

Rehearing Denied Nov. 14, 1935.

Roy Lewis and Norton Fox, both of Groesbeck, and Wm. McCraw, Vernon Coe, and Pat Neff, Jr., all of Austin, for appellants.

Rosenfield & Berwald, of Dallas, amicus curiæ.

W. M. White, of Mexia, and L. W. Shepperd, of Groesbeck, for appellee.

ALEXANDER, Justice.

This suit was brought by W. S. Antonio against Will Adams and Roy Lewis, sheriff and county attorney, respectively, of Limestone county, and A. B. McKenzie, chief of police of the city of Mexia. The plaintiff alleged, in substance, that he was the owner and operator of a number of marble machines in Limestone county; that said machines were not gambling devices; and that the use thereof in nowise violated the penal laws of the state. He alleged that the defendants were threatening to seize and destroy said machines and to arrest the plaintiff and prosecute him for violating the gambling laws of the state. He prayed for a temporary injunction restraining said officers and all other peace officers of said county from interfering with, disturbing, or impeding the free and untrammeled use of said machines in the places of business where they were located and that said officers be enjoined from filing complaints against the plaintiff and arresting or prosecuting him pending further orders of the court. The trial court, or an ex parte hearing, granted the injunction as prayed. Later, after the hearing of evidence, the court overruled defendants' motion to dissolve the temporary writ of injunction, and the defendants appealed to this court.

The evidence discloses that plaintiff owns and has on exhibition in various places in Limestone county a number of marble machines of different makes. All of these machines are built and operated on substantially the same principle. The cabinet of each machine has a flat, horizontal top in the shape of a table approximately 18½ inches wide and 42 inches long and is mounted on four legs, with one end of the table a little lower than the other.

The table legs are capable of being adjusted so as to alter to some extent the elevation or tilt of the table. A game is played on the machine with marbles. The playing board on top of the table, which is protected by a glass cover, has a number of holes in it into which the marble used in playing the game can lodge. Springs and resilient pins are driven into the surface of the board at various places and particularly on the upper side of each of these holes. These pins and springs are used to divert the ball and cause it to roll in a zigzag fashion in uncertain directions across the surface of the board. The marble used in playing the game rests in an alleyway at the lower end of the board and to the right of the player. The operator stands at the lower end of the table and by means of a plunger propelled by a coil spring hits the marble causing it to go up the alleyway and follow along the course of a curbed metal piece across the top of the board to and against a coil spring at the left of the top of the board. When the marble strikes the coil spring, it is caused to rebound onto the playing field. The operator, by regulating the distance the plunger is drawn back before being released and allowed to hit the marble, can, to some degree, control the extent of this rebound, but he has no other control over the marble. After the marble rebounds onto the playing field, it hits the pins or springs near the top of the board and glances from one pin or spring to another as it crosses from the upper to the lower end of the board until it finally rolls into one of the holes in the board or rolls out and off the field at the lower end of the board. The player, in order to secure a marble with which to play the game, must deposit a nickel or 5-cent piece of money into the machine and the machine automatically supplies the playing marble. Some machines supply only one marble for each 5-cent piece so deposited, while others supply as many as ten marbles. The machine pays off to the winners automatically in money. These winnings or losses are determined by the particular hole into which the marble falls. If the marble rolls into some of the holes, the machine pays off 10 cents. Other holes are good for as much as $1 to $1.50 each. Still other holes do not pay anything. Some of the machines pay the players on an average as much as 85 per cent. of the amount deposited by them and retain the other 15 per cent. for the proprietor. Others return to the players as low as 65 per cent. of the amount deposited by them and retain for the proprietor as much as 35 per cent. Most of the machines are electrically equipped so that the contact made by the marble when it falls into the payoff hole causes the money necessary for the payoff to fall into a till that is accessible to the player. If the machine is tilted by the player in an attempt to control the course of the marble, the electrical contact is broken and the machine will not pay off. The owner of the machines places them in various business houses throughout the county, keeps them in repair, and at intervals opens the cash drawer, extracts the winnings, and divides them equally between himself and the proprietor of the place of business where the machine is exhibited.

Pertinent provisions of our Penal Code read as follows:

"Art. 619. If any person shall directly, or as agent or employee for another, or through any agent or agents, keep or exhibit for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming which has no name, or any slot machine, any pigeon hole table, any jenny-lind table, or table of any kind whatsoever, regardless of the name or whether named or not, he shall be confined in the penitentiary not less than two nor more than four years regardless of whether any of the above mentioned games, tables, banks, wheels, devices or slot machines are licensed by law or not. Any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon."

"Art. 620. It being intended by the foregoing articles to include every species of gaming device known by the name of table or bank, of every kind whatever, this provision shall be construed to include any and all games which in common language are said to be played, dealt, kept or exhibited."

The above-quoted article 619, in language that is so clear that it cannot be misunderstood, makes it illegal for any person to "keep or exhibit for the purpose of gaming, any policy game, any gaming table * * * or device of any name or description whatever, * * * or table of any kind whatsoever, regardless of the

name or whether named or not." The so-called "marble machines" here under consideration have flat horizontal tops and are supported by legs and have all the other essential characteristics of what is commonly known as a table. The appellee in his pleadings refers to the tops of these "machines" as "tables." The evidence discloses that a game is played on these tables and that under the plan used in operating them the player deposits a 5-cent coin and receives in return one or more marbles to be used in playing the game. These marbles are then played through the machine in an attempt to lodge them in one of the payoff holes in the surface of the table. If the marble lodges in a payoff hole, the player wins, and, if not, he loses. The effect is that the proprietor or owner simply bets the player the amount of the payoff permissible under the general set-up and mechanism of the table against the 5 cents deposited by the player that the machine will not pay off as much as is deposited by the player. It is simply a case of the owner banking the game against all comers and goers. The exhibitor or proprietor through the machine indirectly receives the bets and pays off the losses. Money is bet on the game and hence such tables or machines are, within the meaning of the statute, "used for gaming." Penal Code, art. 623, provides: "The word 'exhibited' is intended to signify the act of displaying the bank or game for the purpose of obtaining bettors." These machines are equipped with the material necessary for playing and supplied with the money for the payoff and are placed by the owner in various places of business throughout the county so as to make them convenient and accessible to those who might be inclined to bet thereon. The owner keeps them in repair, displays them for the express purpose of obtaining bets, and extracts the winnings as they accumulate. Within the plain letter of the statute, these machines are gaming tables exhibited for the purpose of gaming and come within the inhibition of the statute.

In passing on the question here involved, we have not found it necessary to determine whether the game played on the machines here under consideration is one of skill or one of chance for the reason that the statute makes no such distinction, but applies alike to all such tables exhibited for the purpose of gaming, regardless of the character of the game played thereon.

However, if a decision of this question be necessary to a solution of the case before us, it is our opinion from the evidence that the element of chance, as the game is played, so predominates over the element of skill as to make the game essentially one of chance and not of skill. 27 C.J. 968, 969.

We are not without precedent in our holding on the questions above discussed, for the Court of Criminal Appeals in Christopher v. State, 41 Tex.Cr.R. 235, 53 S.W. 852, had under consideration practically the same questions. In that case the defendant was charged with illegally exhibiting what is now known as a slot machine. At that time the statute did not specifically name a slot machine as a prohibited gambling device. In sustaining the conviction, the court said: "Appellant contends that the gaming device is not one of the games prohibited by the statute, (1) because said slot machine is of recent invention, and was not known when our statutes on the subject were passed, and hence could not have been contemplated by the legislature; (2) that the slot machine is a mere automaton, that keeps and runs itself and is not the subject of being kept or exhibited for the purpose of gaming by any one." After referring to what was then Penal Code, art. 382, which was substantially the same as is Penal Code, art. 619, at this time, except for the fact that the statute did not then specifically name slot machines, the court further said: "As to whether this is one of the gaming devices inhibited by statute, depends both on its construction and use. We gather from the statement of facts that, although the machine was an automaton, it was very skillfully constructed for the pupose of gaming. It not only received the bets, but decided them, and paid the money to itself or to the winner, without the intervention, for the time being, of the keeper or exhibitor. But we also gather that this machine was put in place and arranged and set in motion, and that when it was out of order it was rearranged and repaired, so it could operate. It was so skillfully constructed to serve its purpose that, according to the testimony, 'the chances were against the outsiders as four in favor of the machine to one against it.' It also occurs that the machine did not keep the money it won, but that the profits were divided between appellant and his co-partner. We think this device comes fully within the meaning of

the definition given by Judge Roberts in the Stearnes Case [Stearnes v. State], 21 Tex. [692], 693, so highly eulogized by appellant's counsel: (1) It embodies all the elements of a game of skill or of chance, or of skill and chance, with the chances, however, in favor of the exhibitor, which is usual with games of this character. (2) It has a keeper in the person of the owner or exhibitor, who operates and runs it for profit. (3) It is based on the principle of one against the many; the keeper or exhibitor, through the machine, indirectly receives the bets and pays out the money. (4) The machine is exhibited by the owner or exhibitor for the purpose of obtaining bettors. If not put in place and wound up, or arranged to run, it would not have displayed or exhibited itself. The purpose of its display is to obtain bettors. The fact that it is novel in character does not relieve it from the operation of the statute; for, in the language of Judge Roberts, 'any change, cover, disguise, or subterfuge in any such ingredients, for the purpose of evasion, would not change the character of the game.' In our opinion, the statement of facts shows a gaming device such as is so aptly described in the Stearnes' Case, supra."

The holding of the Court of Criminal Appeals in the above cause, we think, effectively disposes of the issues before us. See, also, Bird v. State, 66 Tex.Cr. R. 611, 148 S.W. 738; Stearnes v. State, 21 Tex. 692, 693; Chappell v. State, 27 Tex.App. 310, 11 S.W. 411.

■ The appellee contends that the machines in question were legalized by section 7 of Acts 1935, 44th Leg., p. 905, c. 354 (Vernon's Ann.Civ.St. art. 7047a—1, § 7). That act imposed a tax on all coin vending machines, including marble machines. Section 7 thereof reads as follows: "Sec. 7. Nothing herein shall be construed to license, permit, authorize, or legalize any coin-operated vending machine the operation, display, or maintenance of which is now illegal under the Penal Code of this State, or under the Constitution of the State of Texas; however, all games of skill, taxed herein, not prohibited by the Penal Code of this State, or the Constitution of the State of Texas shall be authorized." We think the language of the act itself makes it clear that it was not the intention of the Legislature to thereby legalize any gambling device

then prohibited by the Penal Code. This contention is therefore overruled.

■ Lastly, it was contended by appellee in oral argument that the revenue supplied by way of taxes on these machines is badly needed by the state and that this source of revenue ought not to be destroyed at this time. It may be conceded that as a result of the recent depression the government is badly in need of revenue, but it is sufficient to say that we have not yet reached the stage where the state is granting concessions to individuals to violate the law in return for revenue with which to support the government.

From what has been said, it is clear that in our opinion the use of all such machines in the manner contemplated is illegal. Under the provisions of Penal Code, arts. 632 to 638, inclusive, peace officers are not only given the right, but it is made their duty to suppress all such violations of the law and to this end they are authorized, when armed with the proper warrant from a court of competent jurisdiction, to enter upon the premises where any such gambling paraphernalia is kept or exhibited and to arrest and prosecute the one who so exhibits it and to seize all such equipment and carry same before the court issuing such warrant and, after a proper hearing, to destroy same. The trial court's order, therefore, in so far as it restrained the appellants from arresting and prosecuting the appellee and from interfering with, disturbing, or impeding the free and untrammeled use of said machines, was without authority and said order to that effect must be set aside.

■ Appellee alleges, however, that the appellants were threatening to seize and destroy said machines without an order from the court. While appellants deny any such intentions, there was evidence that some of them on a previous occasion had without an order of the court, seized similar machines belonging to other concerns and destroyed them and had donated the money contents of the machines to a local cemetery association. This evidence, in connection with certain threats published in a local newspaper, was sufficient to justify the trial court in inferring that said officers were liable to seize and destroy appellee's machines without first securing an order of the court authorizing them to do so. The statute provides in plain and unmistakable terms that in order to authorize an officer to destroy any

gambling paraphernalia, the owner must be notified, a hearing had, and an order entered by the court authorizing the destruction of said property. Such officers must follow the course laid down by the statute. They cannot lawfully constitute themselves both judge, jury, and executioner and destroy another's property without giving the owner a reasonable opportunity to be heard. For an officer to do so would be a violation of the law. It is the duty of peace officers to obey as well as enforce the law and the fact that they are engaged in enforcing the law by no means justifies a violation of the law on their part. Neither does the fact that usable portions of such paraphernalia or the money contents thereof are donated to a cemetery association or a like organization alter the situation. An unlawful appropriation of another's property cannot be justified on the theory that it is committed in the name of the law, nor is it rendered any the less repulsive on the ground that a part of the property so misappropriated is donated to a worthy charitable organization.

The judgment of the trial court in so far as it restrains the appellants from destroying appellee's property without first securing an order from a court of competent jurisdiction authorizing them to do so will be allowed to stand. In all other respects the judgment of the trial court is set aside and the injunction dissolved.