### CALLISON v. STATE.
### No. 4260.

Court of Civil Appeals of Texas. El Paso.

Dec. 31, 1942.

Rehearing Denied April 1, 1943.

SUTTON, Justice.

This is an appeal from the 101st District Court of Dallas County.

The suit was originally instituted by the State, through the District Attorney of Dallas County, for the destruction of certain equipment, paraphernalia, machines and devices claimed to have been used and operated for gaming purposes contrary to the provisions of the criminal laws of the State. Among the lot were two units called "Callison Quiz Advertising Programs." Appellant, W. E. Callison, intervened and claimed these units and sought to avoid their destruction.

The trial was to the court without a jury, and judgment entered condemning the property and directing its destruction. From that judgment this appeal has been brought.

Callison has three assignments of error and has briefed four propositions. As we understand them they present two questions. His first position is, his property or game is not a gambling device within the meaning of Art. 619, Penal Code, because it is a game in which skill predominates rather than chance; and secondly that his property was illegally seized without warrant.

The devices consist of a placard approximately 12 by 18 inches and a glass bowl similar to a fish bowl. Across the top of the placard is the name given above in large type. Then follows in large, plain type in red a suggestion that the rules be read carefully before participating in the program; then an explanation why it is not regarded by the owner as unlawful, and then 17 rules of the game. The lower left approximately one-third of the placard is ruled off into three columns. In the left column are twelve combinations of numbers, 101-102; 102-103, etc., to 112-113. In the next column to the right and opposite each combination of numbers is a question, and in the third column the value of the correct answer to the question, e.g., opposite 101-102 is the question: "Does a peace officer have a right to destroy or dispose of seized property at will without a court order?" The value of the correct answer is $1.00. The values then diminish in order to 75¢, 50¢, 40¢, 30¢, 25¢, 20¢, 15¢ and the last four for 10¢ each. The last question is: "Give two names for a young hog." The 25¢

J. P. Miller, of Dallas, for appellant.

Dean Gauldin, Criminal Dist. Atty., Warren S. Cook, Asst. Dist. Atty., and H. Pat Edwards, Asst. Dist. Atty., all of Dallas, for appellee.

774

question is: "Do persimmons grow in Texas?"

There are 1,836 capsules in the bowl containing numbers for each of which there is a question. There are twelve for each of the twelve combinations of numbers on the board. Mr. Callison explained in his testimony that there were in the bowl 132 capsules containing the one dollar combination against 1,704 that did not.

The participant paid 5¢ for the privilege of drawing a capsule containing a number from the bowl. Rule 2 required him to segregate his question from the group displayed on the board and disclose the correct answer in thirty seconds. If he were unable to complete the performance within the thirty seconds, or, if his answer be incorrect, he lost his nickel. If within time and his answer be correct, he received the amount opposite his number combination and question, ranging from 10¢ to one dollar, as above indicated. It cannot be known what the number will be until it is drawn and removed from the capsule.

The numbers and questions were subject to change at the will of the possessor.

Mr. Callison explained the advertising feature of the program briefly thus: Any advertiser might sponsor any question, "for instance, the answer to the following question is paid for with the compliments of the North American Cafe, 403 North Bishop, Dallas, Texas." That is the 25¢ question. "It is so arranged that 153 advertisements could be placed on a card; for instance, a department store could ask 153 questions about 153 different pieces of merchandise."

The two pieces of equipment involved in this case were picked up by Dallas police officers, one in a cafe on North Harwood and the other in an Oak Cliff cafe. Each was on the counter by the cash register.

■ We are of the opinion they are "gaming devices" within the meaning of Art. 619, Penal Code of Texas, which makes it unlawful to "keep or exhibit for the purposes of gaming, any policy game * * * or device of any name or description whatever * * * or device for the purpose of gaming which has no name * * *."

■ Our code does not define game or gaming, nor does the statute make any distinction between games of chance and games of skill. Texas Courts have made no such distinctions. In the early case of Stearnes v. State, 21 Tex. 692, the Supreme Court, on a consideration of the statute containing the language above quoted, defined a game as follows: "A game is a trial of skill, or of chance, or of skill and chance, between two or more contending parties, according to some rule by which each may succeed or fail in the trial." This rule was held to be correct in Toler v. State, 41 Tex.Cr.R. 659, 56 S.W. 917. As we understand the opinion in Adams v. Antonio, Tex.Civ.App., 88 S.W.2d 503, writ refused, that definition was again recognized as correct. In this latter case it is said that it was unnecessary to determine whether the game played is one of chance or skill for the reason the statute makes no such distinction (bottom first column, 88 S.W.2d at page 505). The contention that skill predominates avails nothing. The inducement and lure of this game is the odds ranging from two to twenty to one. In an application of this statute we think the proper test is, does it encourage the gambling instinct? Under the facts here the answer is obvious. The first gamble here is that the participant can and will draw a number of greater value than the minimum, and secondly, that he can give the correct answer held by the possessor or exhibitor.

■ Mr. Callison testified these devices were placed in operation and to be operated in accordance with the rules and for the fee of 5¢; that they were open to the whole public, to any and all who desired to participate. That they were kept and exhibited within the meaning of Arts. 619 and 623 is too apparent to require comment.

On the second question the facts are: Mr. Callison testified he called on the Chief of Police of the City of Dallas and explained to him his program, and told him he was going to place them in operation. He was advised they would be picked up. He placed them in the places where found, and says he telephoned the Chief where one of them was, and is not sure that he did or did not tell him where the other was. Police officers picked them up. They were in places of business owned and operated by others and not by Callison.

■ The Court of Criminal Appeals has held consistently and many, many

times, that a defendant cannot complain that a search and seizure is unlawful unless he is the owner or proprietor of the place, or has some interest therein. We cite but one case: Phariss v. State, 137 Tex.Cr.R. 469, 131 S.W.2d 965. Moreover, it has likewise been held a search and seizure of slot machines under the statutes here under consideration in places operated by others than the claimant is not unlawful. Moore v. Adams, Tex.Civ. App., 91 S.W.2d 447. This proposition cannot, therefore, be sustained and is overruled.

There is no error in the trial court's judgment, and it is affirmed.

WALTHALL, J., not participating.