

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 7, 1947

Honorable J. G. Anderson　　　　Opinion No. V-238
County Attorney
Freestone County　　　　　　Re: Are the lottery laws of Texas
Fairfield, Texas　　　　　　　　violated under a cooperative
　　　　　　　　　　　　　　　　advertising plan known as
　　　　　　　　　　　　　　　　"bonanza"

Dear Mr. Anderson:

　　　　Your request for an opinion as to whether or not the plan referred to as "bonanza" and outlined in your letter constitutes a lottery has been carefully considered. You have submitted the rules, regulations, and instructions under which this advertising plan operates, and the plan as a whole has been reviewed. Due to the length of the various enclosures, it is impossible to set them out in their entirety, but they are returned herewith in accordance with your request..

　　　　"Bonanza" is a program designed for use by motion picture theatres or radio stations in cooperation and in conjunction with a group of business firms. The object of the plan is the stimulation of business which is accomplished by creating an incentive for the public to patronize the firms of the participants. The business firms contribute to a fund known as the bonanza award fund, and distribute to the public and to their patrons coupons entitling them to participate in a drawing held weekly in which a portion of the bonanza fund is awarded to certain coupon holders. The coupons are punched or otherwise marked in accordance with a schedule of values, and the greater the amount of the purchase, the greater the value of the coupon. These coupons entitle the holder, upon qualifying, to a portion of the bonanza award fund varying from 1/20 to 1/2 of the fund, depending upon the amount punched upon the coupon at the time of purchase. The plan further provides that one question to be known as the initial skill question must be answered true or false on the back of the coupon in order for the contestant to qualify. In other words, the person becomes eligible to receive a cash prize upon his coupon being drawn and upon the true false question on the reserve side being answered correctly. After thus qualifying, the contestant is asked to answer from one to ten questions, the number of questions asked depending upon the value of the coupon. In other words, if the coupon entitles him to 1/20 of the total amount in the bonanza award fund, he is asked to answer one question and the number of questions is increased dependent upon the value of

the coupon to a maximum of ten questions, which are asked of the contestant holding a coupon entitling him to 1/2 of the amount in the bonanza award fund.  These latter questions are known as the final skill questions and are to be distinguished from the single true-false question answered on the reverse side of the coupon, which is designated qualifying skill question.  In order for the contestants to familiarize themselves with the group of questions from which will be chosen the final question or questions as the case may be, these questions may be broadcast, posted near the coupon deposit boxes, or mailed.  The plan further provides that a contestant may elect to answer questions from such category as he or she chooses to select, and the plan provides that all questions will be made available in public places for persons to read and study.  The plan contains the further stipulation that a free coupon will be given any qualified adult person without consideration of purchase or patronage when a request for the coupon is made of the head of a firm giving them.

In the past, this department has been called upon on numerous occasions to render opinions as to the validity of various advertising and promotional plans.  However, a review of these opinions shows that none of them were written on a fact situation similar to the one presented in your request.  After a consideration of the plan known as "bonanza", we believe that two questions are involved in determining whether or not this scheme is a lottery.  The first question is whether of not the fact that a person upon request may receive a free coupon would remove the element of consideration from this plan thereby depriving it of one of the three essential elements of a lottery.  The second question presented is whether after a consideration of all the facts the plan involves the element of chance.

Article 654 of the Penal Code provides:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

In 28 Texas Jurisprudence 409, 410, we find the following definition of lottery:

"The term lottery has no technical significa- tion in the law, and since our statute does not provide a definition, its meaning must be deter- mined from popular usage.  According to that test a lottery is a scheme for the distribution of prizes

by lot or chance among those who have paid or
agreed to pay a consideration for the right to
participate therein, or the distribution itself."

A similar definition to the one above appears in 34
American Jurisprudence 647, 648, and in addition, this language
is also found:

"As appears from the foregoing definitions,
the three essential elements of a lottery are:
(1) consideration; (2) prize; and, (3) chance.
In order to comprise a lottery, these three ele-
ments or ingredients must be present; . . . . ."

After a reading of the above definitions, it
appears that the element of prize is present in the
plan known as "bonanza". However, the elements of
consideration and chance are not so clearly present,
and it is necessary to determine whether or not
these elements are contained in the plan before us.

The first question is whether or not the element of con-
sideration is present in this plan.  It has been settled by the
Texas Courts that the element of consideration is present under a
plan whereby coupons for a drawing are given with purchases of mer-
chandise.  In support of this proposition, we cite the following
language from Featherstone v. Independent Service Station Associa-
tion of Texas, 10 S.W. (2d) 124:

"Patronage thus induced was the consideration
that passed from the ticket holder for the chance
received, in that the price paid, whatever it was,
the amount being immaterial, constitututed the
aggregate price for the merchandise or service
and the ticket that represented a chance to win
the prize; in other words, for one undivided price
both were purchased, the merchandise, or service,
and ticket, the ticket being as much bought as
though priced separately."  (Emphasis added)

The instructions state that a free coupon will be given
any qualified adult person without consideration of purchase or
patronage when requested from the head of a firm giving coupons.

In this connection, we should like to cite the case of
City of Wink v. Griffith Amusement Company, decided by the Supreme
Court of Texas, in 1936, and reported in 100 S.W. (2d) 695.  This
case was a "bank night" case, and persons were allowed to regis-
ter for the drawing without buying a theatre ticket.  Judge Cureton,
speaking for the Court, used this language :

"The actual money returns on 'bank night'
would suggest that if any free numbers were ever
distributed, they were negligible. We gather
from the whole testimony that the so-called 'free
numbers' feature was largely one that existed in
the minds of those who operated the theatre, and
that it was never made a real active part of the
'bank night' plan. True, no doubt if anyone had
applied for a free registration to the drawing,
it would have been given, but human nature is such
that the average person would seldom, if at all,
suffer the natural embarrassment of asking for a
free registration. Indeed, if this were not so,
the income from 'bank nights' would not have been
substantially more than that which had obtained
prior to the operation of the plan. In fact, the
whole plan is built up and made profitable because
no normal person likes to 'bum' his neighbor for
something, and by an appeal to the psychology of
cupidity which makes some take a chance of making
large gains by a small outlay. Those who invented
and formulated the plan may not have been 'learned
in the law' but their knowledge of mass-psychology
was not wanting."

We believe this language sufficient to show that the
element of consideration is not removed by the giving of free
coupons upon request. It is our opinion that the further fact
that the request must be made to the head of a firm will serve
even more to deter a person from asking for a free coupon.

The next question is whether or not the element of chance
is present in the plan. In order to win a cash award a person's
name must first be drawn and then certain questions must be cor-
rectly answered. At first blush the plan seems to involve both
chance and skill. In 27 Corpus Juris 968, we find this definition
of "game of chance":

"The phrase 'game of chance', it has been
said, is not one long known in the law and having
there in a settled signification. It is a game
determined entirely or in part, by lot or mere
luck, and in which judgment, practice, skill or
adroitness have honestly no office at all, or are
thwarted by chance; a game in which hazard entire-
ly predominates."

An excellent and exhaustive annotation on games of chance
and games of skill appears in 135 A.L.R. 104-188. This annotation
reviews the various types of games and discusses the ingredients

of chance and skill as they appear in these games.  Unfortunately,
no Texas cases appear nor have any been found elsewhere, in which
a Court has drawn a distinct line between games of chance and
games of skill.  The case of Adams v. Antonio, 88 S.W. (2d) 503,
error refused, was decided by the Waco Court of Civil Appeals in
1935.  This case involved the question of whether or not marble
machines were gambling devices under Articles 619 and 620, Ver-
non's Penal Code.  We think the opinion pertinent only because
of Judge Alexander's adoption of the language cited above from
27 Corpus Juris.  The following statement is quoted from the
opinion:

> "In passing on the question here involved,
> we have not found it necessary to determine whether
> the game played on the machines here under consid-
> eration is one of skill or one of chance for the
> reason that the statute makes no such distinction
> but applies alike to all such tables exhibited for
> the purpose of gambling, regardless of the character
> of the game played thereon.  However, if a deci-
> sion of this question be necessary to a solution
> of the case before us, it is our opinion from the
> evidence that the element of chance, as the game is
> played, so predominates over the element of skill
> as to make the game essentially one of chance and
> not of skill.  27 C. J. 968-969."

As to whether the element of chance must control over
the element of skill in order to bring a particular scheme under
the lottery laws, we cite 34 American Jurisprudence, pages 649,
650:

> "In the United States, however, by what appears
> to be the weight of authority at the present day, it
> is not necessary that this element of chance be pure
> chance, but it may be accompanied by an element of
> calculation or even of certainty; it is sufficient
> if chance is the dominant or controlling factor.

> " . . . . . .

> "It has been said that no sooner is the term
> 'lottery' defined by a court than ingenuity evolves
> some scheme within the mischief discussed, although
> not quite within the letter of the definition given;
> but an examination of the many cases on the subject
> will show that it is very difficult, if not impossi-
> ble, for the most ingenious and subtle mind to de-
> vise any scheme or plan short of a gratuitous dis-
> tribution of property, which has not been held by the

courts of this country to be in violation of the
lottery laws in force in the various states of
the Union.  The courts will inquire, not into the
name, but into the game, however skillfully dis-
guised, in order to ascertain if it is prohibited,
or if it has the element of chance." (Emphasis
added)

Again, to show the general rule followed, we quote from
Volume 2 of Brill's Cyclopedia of Criminal Law, page 1715:

"It is not a lottery where the prizes are
awarded as the result of a contest depending solely
on skill or judgment.  And it has been held by some
courts that the distribution must be purely by
chance without any other element affecting the re-
sult.  But according to the weight of authority it
is sufficient if chance is the dominating element,
although the result may be to some extent affected
by the exercise of judgment or skill, or though
there may also be an element of uncertainty."
(Emphasis added)

The following language quoted from 38 Corpus Juris 291,
also sets forth the general rule:

"The rule generally followed in the United
States is that the word 'lottery' includes those
schemes wherein chance is the dominant factor in
determining the result, although it may be affected
to some degree by the exercise of skill or judgment;
but the rule, known as 'the pure chance doctrine',
that a contest is not a lottery unless its issue
depends entirely on chance, is supported by some
authorities in this country, and is of general appli-
cation in England and Canada.

"While the better rule is that the fact that
skill or judgment may be applied in a competition
does not prevent it from being a lottery if the
element of chance predominates, yet, even where
that rule prevails, it is also well settled that
competitions in which skill or judgment is the
predominant factor in determining the winners are
not lotteries, even though the competitors are
required to pay an entrance fee." (Emphasis added)

You have submitted a list of qualifying and final ques-
tions which must be correctly answered by the persons whose names
are chosen.  The instructions inform us that these questions will

be publicized prior to the drawing, and that a person may select from the publicized list the category of questions he wishes propounded to him.  As already stated, the minimum number of final questions asked of a contestant is one and the maximum ten.  However, even though all final questions are not answered correctly, the contestant receives a share of the award fund for each question properly answered.  We have read the questions bearing in mind the above facts, and it is our opinion that in the plan known as "bonanza" the element of chance predominates.

It is therefore the opinion of this department that the plan "bonanza" contains the three essential elements of a lottery and would be violative of Article 654 of Vernon's Penal Code.

## SUMMARY

Under a sales stimulation plan known as "bonanza" wherein customers are given coupons with each purchase, which coupons entitle them to participate in a drawing, for a cash award, the fact that upon request, a coupon may be received without a purchase, does not remove from the scheme the element of consideration necessary for a lottery.  The plan "bonanza" contains the three essential elements of a lottery -- consideration, prize and chance -- and is violative of Article 654, Vernon's Penal Code.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/Clarence Y. Mills
    Clarence Y. Mills
    Assistant

APPROVED:
    s/Price Daniel
ATTORNEY GENERAL

Enclosures

CYM:jmc:wc