The STATE of Texas, Petitioner,

v.

Linda MORALES, Tom Doyal, Patricia
Cramer, Charlotte Taft and John
Thomas, Respondents.

No. D–2393.

Supreme Court of Texas.

Jan. 12, 1994.

Harry G. Potter, III, Dan Morales, Austin, for petitioner.

J. Patrick Wiseman, Pamela C. Oglesby, Austin, Nell Hahn, Lafayette, LA, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which GONZALEZ, HIGHTOWER, HECHT and ENOCH, Justices join.

▇ Equity jurisdiction does not flow merely from the alleged inadequacy of a remedy at law, nor can it originate solely from a court's good intentions to do what seems "just" or "right;" the jurisdiction of Texas courts—the very authority to decide cases—is conferred solely by the constitution and the statutes of the state.[1]

▇ In this state's bifurcated system of civil and criminal jurisdiction, a civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights. A naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is clearly not within the jurisdiction of a Texas court sitting in equity.[2]

This is a constitutional challenge to TEX.PENAL CODE ANN. § 21.06 (Vernon 1989) ("21.06"),[3] Texas' sodomy statute. The trial court declared this criminal statute to be unconstitutional and enjoined its enforcement.[4] The court of appeals affirmed solely on the basis that the statute violates the plaintiffs' constitutional right of privacy under the Texas Constitution. We conclude, however, that neither this court, nor the courts below, have jurisdiction to enjoin the enforcement of, or issue a declaratory judgment determining the constitutionality of, 21.06.[5] Therefore, we reverse the judgment of the court of appeals and remand this case to the trial court with instructions to dismiss.

Linda Morales, Tom Doyal, Patricia Cramer, Charlotte Taft, and John Thomas ("plain-

---

1. *See Pope v. Ferguson,* 445 S.W.2d 950, 952 (Tex.1969) ("This court was created by the Constitution of the State of Texas and has only such jurisdiction as is conferred upon it by the Constitution and statutes of the State.... This is not a lately developed philosophy, born of a desire to escape responsibility in a troublesome area of the law. It has always been the rule of decision in this State.").

2. The plaintiffs have not sought to invoke the equitable powers of our courts to enjoin any rule or policy promulgated pursuant to 21.06; rather, they seek an injunction solely against *prosecutions* under 21.06, a request that is at odds with their argument that it is unlikely that 21.06 will even be enforced.

3. Section 21.06 provides as follows:

 *Homosexual Conduct*
 (a) A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex.
 (b) An offense under this section is a Class C misdemeanor.
 TEX.PENAL CODE ANN. § 21.06 (Vernon 1989). "Deviate sexual intercourse" is defined in § 21.-01(1) as:

(A) any contact between any part of the genitals of one person and the mouth or anus of another person; or
(B) the penetration of the genitals or the anus of another person with an object.
TEX.PENAL CODE ANN. § 21.01(1) (Vernon 1989).

4. Plaintiffs claim that the statute violates their constitutional right to privacy, *see Texas State Employees Union v. Texas Dept. Mental Health and Mental Retardation,* 746 S.W.2d 203, 205 (Tex.1987), and both the due course of law, TEX. CONST. art. 1, §§ 13, 19, and the equal protection, TEX. CONST. art. 1, §§ 3, 3A, provisions of the Texas Constitution.

5. *But see City of Dallas v. England,* 846 S.W.2d 957, 959 (Tex.App.—Austin 1993, writ dism'd w.o.j.) (noting that the plaintiff had actually suffered "the concrete injury that the plaintiffs in *Morales* alleged they *would* suffer" in a case in which relief was sought from a specific hiring policy of the police department) (emphasis added). We dismissed the City's application for writ of error because no motion for rehearing, upon which our jurisdiction depended, was filed in the court of appeals. Thus, we did not address the merits of that case.

tiffs"), filed this suit challenging the constitutionality of 21.06, which they claim, by its very existence, stigmatizes them as criminals for engaging in conduct protected by their privacy rights under the Texas Constitution. They also allege that 21.06 limits homosexuals' career and employment opportunities and encourages hate crimes. Although they do not dispute the Attorney General's contention that 21.06 has not been, and in all probability will not be, enforced against private consensual conduct between adults, the plaintiffs also claim to fear prosecution.

The Attorney General denies the statute is unconstitutional; but he also contends that civil courts under these circumstances have no power to grant either injunctive or declaratory relief based on the unconstitutionality of a criminal statute. *See, e.g., Crouch v. Craik,* 369 S.W.2d 311, 315 (Tex.1963) ("It is only where a criminal statute is void and vested property rights are being impinged as the result of an attempt to enforce such void statutes that the jurisdiction of the courts of equity can be invoked.").

Furthermore, the Attorney General argues that the plaintiffs seek adjudication of a hypothetical controversy: there is no record of even a single instance in which the sodomy statute has been prosecuted against conduct that the plaintiffs claim is constitutionally protected; none of the plaintiffs claims a specific instance of career or employment opportunities having been restricted by the existence of the statute;[6] none of the plaintiffs alleges having been the victim of a hate crime, or a fear of becoming the victim of any specific threatened future event.

The court of appeals acknowledged the general validity of the State's argument: civil equity courts have no jurisdiction to enjoin the enforcement of criminal statutes in the absence of irreparable harm to vested *property* rights. However, the court of appeals

held that this court had enlarged a civil court's equity jurisdiction to protect *personal* rights in *Passel v. Fort Worth Indep. Sch. Dist.,* 440 S.W.2d 61 (Tex.1969), *on appeal after remand,* 453 S.W.2d 888 (Tex.Civ. App.—Fort Worth 1970, writ ref'd n.r.e.), *cert. denied,* 402 U.S. 968, 91 S.Ct. 1667, 29 L.Ed.2d 133 (1971). The court of appeals, therefore, proceeded to the merits of the case and affirmed the judgment of the trial court, declaring the sodomy statute unconstitutional and enjoining its enforcement. 826 S.W.2d 201, 202–03.

## I.

Equity jurisdiction is limited. Justice Joseph Story has explained the historical reasons for this limitation, as follows:

[I]n the infancy of our Courts of Equity, *before their jurisdiction was settled,* the chancellors themselves, "partly from their ignorance of the law (being frequently bishops or statesmen), partly from ambition and lust of power (encouraged by the arbitrary principles of the age they lived in), but principally from the narrow and unjust decisions of the Courts of Law, had arrogated to themselves such unlimited authority as hath totally been disclaimed by their successors for now (1765) above a century past. The decrees of the Court of Equity were then rather in the nature of awards, formed on the sudden, pro re nata, with more probity of intention than knowledge of the subject, founded on no settled principles, as being never designed, and therefore never used, as precedents."

JOSEPH STORY, 1 STORY'S EQUITY JURISPRUDENCE 18 (Melville M. Bigelow ed., 13th ed. 1886) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *433) (emphasis added). Such unlimited authority, over time, became circumscribed by rules of procedure and limitations on jurisdiction. If an equity court's jurisdiction was limited only by its reach,

---

6. Without resolving the question of whether, generally, an employee can have a prospective property interest in her job, we hold that these plaintiffs' allegations concerning employment are insufficient to satisfy the irreparable-injury-to-property-rights requirement for equity jurisdiction. Although the plaintiffs allege, generally, that their employment opportunities are affected by the mere existence of 21.06, not one of the

plaintiffs points to any *specific* instance of such an injury to employment, making the fashioning of any specific equitable relief impossible. Further, as the irreparable harm to property rights must flow from attempted *enforcement* of the statute, the plaintiffs cannot simultaneously urge the mutually exclusive contentions that 21.06 is not enforced and that the enforcement of 21.06 affects their employment opportunities.

experience demonstrated that the arbitrary exercise of that power was certain to result. And if we endeavored:

> To determine every particular case according to what is just, equal, and salutary, taking in all circumstances [it] is undoubtedly the idea of a court of equity in its perfection; and had we angels for judges such would be their method of proceeding without regarding any rules: but men are liable to prejudice and error, and for that reason, cannot safely be trusted with unlimited powers. Hence the necessity of establishing rules, to preserve uniformity of judgment in matters of equity as well as of common law: the necessity is perhaps greater in the former, because of the variety and intricacy of equitable circumstances. Thus though a particular case may require the interposition of equity to correct a wrong or supply a defect; yet the judge ought not to interpose, unless he can found his decree upon some rule that is equally applicable to all circumstances of the kind. If he be under no limitation, his decrees will appear arbitrary, though substantially just—and, which is worse, will often be arbitrary, and substantially unjust; for such, too frequently, are human proceeding when subjected to no control. General rules, it is true, must often produce decrees that are materially unjust; for no rule can be equally just in its application to a whole class of cases that are far from being the same in every circumstance—but this inconvenience must be tolerated, to avoid a greater, that of making judges arbitrary. A court of equity is a

happy invention to remedy the errors of common law: but this remedy must stop some where; for courts cannot be established without end, to be checks one upon another. And hence, it is, that, in the nature of things, there cannot be any other check upon a court of equity but general rules.

HENRY HOME, PRINCIPLES OF EQUITY 46 (2d ed. 1767). *See also* THE FEDERALIST NO. 51, at 337 (Alexander Hamilton or James Madison) (Sherman F. Mittell ed., 1937) ("If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary.").

The long-standing limitation on equity jurisdiction that controls this case relates to the narrow circumstances under which an equity court can construe a criminal statute. *See* JOHN NORTON POMEROY, 1 POMEROY'S EQUITY JURISPRUDENCE 509–10 (Spencer W. Symons ed., 5th ed. 1941) ("[E]quity will not ordinarily interfere with criminal prosecutions under unconstitutional statutes or ordinances unless the prevention of such prosecutions is essential to the safeguarding of rights of property.").[7]

## II.

There are four types of cases in which a party might seek relief from an equity court based on the alleged unconstitutionality of a criminal statute: (1) the statute is enforced and the party is being prosecuted, (2) the statute is enforced and the threat of prosecution is imminent, although the party has yet

---

**7.** The dissent places great emphasis on *City of Austin v. Austin City Cemetery Ass'n*, 87 Tex. 330, 28 S.W. 528 (1894), 869 S.W.2d at 949 (Gammage, J., dissenting). *Austin City Cemetery Ass'n*, however, cites to authority requiring injury to property. 28 S.W. at 529 (citing *Spinning Co. v. Riley*, L.R. 6 Eq. 551). Further, all of the potential "injuries" discussed by the court in *Austin City Cemetery Ass'n* flow from potential *enforcement* of the statute. 28 S.W. at 530 (speculating that the in terrorem effect of the ordinance accomplishes the same result that enforcement of the ordinance would accomplish a "prohibition against the burial of the dead within the limits of the city of Austin"). If the cemetery owner, or as in the case of the hypothetical discussed by the *Austin City Cemetery Ass'n* court, a butcher, faced no threat of prosecution whatsoever, the ordi-

nance would have no in terrorem effect. For if the facts of *Austin City Cemetery Ass'n* were the same as the facts before us today, and there were no alleged threat of prosecutions under the statute, there would be no in terrorem effect to the ordinance. Without a threat of enforcement, there is no in terrorem effect, and thus no injury justifying an injunction. When a statute is not enforced, a party cannot "do an act which *may cause him to be arrested and prosecuted,* however clear he might be in his own mind that the act constituted no violation of the criminal law." 28 S.W. at 529–30 (emphasis added). The *Austin City Cemetery Ass'n* court depended on the potential enforcement of the statute; the dissent, which continually decries the lack of any potential enforcement of 21.06, cannot find support from such inapposite authority.

to be prosecuted, (3) there is no actual or threatened enforcement of the statute and the party does not seek an injunction against its enforcement, but the statute is nonetheless integrally related to conduct subject to the court's equity jurisdiction, or (4) there is no actual or threatened enforcement of the statute and no complaint of specific conduct remediable by injunction.

 Most cases fall in either of the first two categories. In those contexts:

It is well settled that courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to vested property rights. The underlying reason for this rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. When these questions can be resolved in any criminal proceeding that may be instituted and vested property rights are not in jeopardy, there is no occasion for the intervention of equity. A person may continue his activities until he is arrested and then procure his release by showing that the law is void.

*Passel,* 440 S.W.2d at 63 (citations omitted). The holdings of our courts are legion that intervention by an equity court is inappropriate under these circumstances, unless the statute is unconstitutional and there is the threat of irreparable injury to vested property rights.[8]

The third scenario is *Passel.* In *Passel,* the minor plaintiffs sought a declaration that a penal statute unconstitutionally denied rights of free association, and an injunction to prevent school officials from denying them admission to public schools because of membership in certain student clubs. *Passel,* 440 S.W.2d at 62. No injunctive relief was sought against the statute itself, Article 301d,[9] which prohibited certain clubs in all

---

8. *See, e.g., Bielecki v. City of Port Arthur,* 12 S.W.2d 976, 978 (Tex. Comm'n App.1929, judgm't adopted); *Ex parte Phares,* 122 Tex. 104, 53 S.W.2d 297, 298 (1932); *Kemp Hotel Operating Co. v. City of Wichita Falls,* 141 Tex. 90, 170 S.W.2d 217, 219 (1943); *State ex rel. Flowers v. Woodruff,* 150 Tex.Crim. 255, 200 S.W.2d 178, 181 (1947); *Smith v. Decker,* 158 Tex. 416, 312 S.W.2d 632, 634 (1958); *State ex rel. Burks v. Stovall,* 168 Tex.Crim. 207, 324 S.W.2d 874, 875–76 (1959); *State v. Logue,* 376 S.W.2d 567, 569 (Tex.1964); *Crouch v. Craik,* 369 S.W.2d 311, 315 (Tex.1963); *City of Fort Worth v. Craik,* 411 S.W.2d 541, 542 (Tex.1967); *City of Richardson v. Kaplan,* 438 S.W.2d 366 (Tex.1969) (per curiam); *Passel v. Fort Worth Indep. Sch. Dist.,* 440 S.W.2d at 63; *Dearing v. Wright,* 653 S.W.2d 288, 290 (Tex.1983) (Robertson, J., concurring); *Hurt v. Oak Downs, Inc.,* 85 S.W.2d 294, 296 (Tex.Civ.App.—Dallas 1935), *dism'd as moot,* 128 Tex. 218, 97 S.W.2d 673 (1936); *Roberts v. Gossett,* 88 S.W.2d 507, 510 (Tex.Civ.App.—Amarillo 1935, no writ); *Adams v. Antonio,* 88 S.W.2d 503, 506–07 (Tex.Civ.App.—Waco 1935, writ ref'd); *Barkley v. Conklin,* 101 S.W.2d 405, 407 (Tex.Civ.App.—Waco 1937, no writ); *Love v. Worsham,* 101 S.W.2d 598, 600 (Tex.Civ.App.—Beaumont 1937, no writ); *Gurtov v. Williams,* 105 S.W.2d 328, 330 (Tex.Civ.App.—Galveston 1937, writ dism'd); *Shupe v. City of Fort Stockton,* 123 S.W.2d 408, 409 (Tex.Civ.App.—El Paso 1938, no writ); *Angelo v. Brown,* 139 S.W.2d 197, 198 (Tex.Civ.App.—Galveston 1940, no writ); *Townsend v. McDonald,* 149 S.W.2d 1038, 1039 (Tex.Civ.App.—San Antonio 1941, writ ref'd); *Brazell v. Gault,* 160 S.W.2d 540, 542 (Tex.Civ.App.—Amarillo 1942, no writ); *City of*

*Ballinger v. Boyd,* 173 S.W.2d 363, 364 (Tex.Civ.App.—Austin 1943, no writ); *Salinas v. Moore,* 201 S.W.2d 68, 69 (Tex.Civ.App.—San Antonio 1947, no writ); *Pierce v. City of Stephenville,* 206 S.W.2d 848, 851 (Tex.Civ.App.—Eastland 1947, no writ); *Liegl v. City of San Antonio,* 207 S.W.2d 441, 443 (Tex.Civ.App.—San Antonio 1947, writ ref'd n.r.e.); *City of Corsicana v. Wilson,* 249 S.W.2d 290, 292 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.); *Department of Public Safety v. Buck,* 256 S.W.2d 642, 646 (Tex.Civ.App.—Austin 1953, writ ref'd); *Stecher v. City of Houston,* 272 S.W.2d 925, 928 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.); *Malone v. City of Houston,* 278 S.W.2d 204, 206 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.); *City of Fort Worth v. McDonald,* 293 S.W.2d 256, 259 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.); *Bell Dental Laboratory, Inc. v. Walton,* 307 S.W.2d 342, 345 (Tex.Civ.App.—Houston 1957, no writ); *Young v. City of Seagoville,* 421 S.W.2d 485, 487 (Tex.Civ.App.—Dallas 1967, no writ); *City of Corpus Christi v. Gilley,* 458 S.W.2d 124, 127 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *Covarrubia v. Butler,* 502 S.W.2d 229, 231 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.); *Air Curtain Destructor Corp. v. City of Austin,* 675 S.W.2d 615, 617–18 (Tex.Civ.App.—Tyler 1984, writ ref'd n.r.e.); *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 551 (Tex.Civ.App.—Houston [1st Dist.] 1988, writ denied).

9. Act of May 17, 1949, 51st Leg., R.S., ch. 429, 1949 Tex.Gen.Laws 803 (Tex.Penal Code art. 301d (1925)) (repealed and recodified 1969) (current version at Tex.Educ.Code Ann. §§ 4.20–.21 (Vernon 1991)).

public schools of the state below college level. *Passel*, 440 S.W.2d at 64. Rather, injunctive relief was sought solely to "prevent administrative enforcement of an administrative regulation adopted for the purpose of implementing the statute." *Id.* Under those facts, we explained that an injunction may be granted to protect personal as well as property rights.[10]

The crucial distinction in *Passel* is that the plaintiffs did not seek a naked declaration of the penal statute's unconstitutionality. Rather, they sought a declaration of the invalidity of the statute and an injunction against enforcement of the school district rule that effectively suspended a student until the student's parents signed a form certifying that their child was not a member of a prohibited club. *Id.* at 62–63. In other words, even though "no prosecution [under the relevant criminal statute was] threatened or even contemplated," the plaintiffs' immediate complaint was about the *rule*, a matter within the court's equity jurisdiction and remediable by the court's injunction, if otherwise appropriate. *Id.* at 64.

We did not hold in *Passel* that a *personal* right can be uniformly substituted for a *property* right and that a civil court's equity jurisdiction over criminal statutes was thereby expanded.[11] Rather, in *Passel* we held that an injunction directed at the offending school district rule was potentially available as a remedy, and that the protection of personal rights would be a sufficient justification.[12] To the extent that the court of appeals read *Passel* more broadly, it was in error.[13]

The fourth posited scenario describes this case. In this most abstract of contexts from which to decipher constitutional mandates, equity jurisdiction is plainly lacking.

▮▮▮▮ An injunction will not issue unless it is shown that the respondent will engage in the activity enjoined.[14] *See Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex.1983) (holding that the fear or apprehension of the possibility of injury is

---

**10.** *Passel*, 440 S.W.2d at 63 ("[I]t seems clear to us that the Texas statute [formerly Tex.Civ.Stat. Ann. art. 4642, now Tex.Civ.Prac. & Rem.Code § 65.011 (Vernon 1986 & Supp.1994)] is broad enough to authorize the granting of an injunction for the protection of personal rights."). This court refused, however, to affirm the temporary injunction, concluding that it was not warranted by the evidence in the record. *Id.* at 65. On remand the validity of the regulation was upheld. *Passel v. Fort Worth Indep. Sch. Dist.*, 453 S.W.2d 888 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

**11.** In fact, the very year after *Passel* was decided, Justice Walker, its author, again noted for a unanimous court the general rule limiting an equity court's power to interfere with the *enforcement* of a criminal statute. *See Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894 (Tex.1970).

**12.** Of the three cases the *Passel* court cited to support its conclusion that injunctions could issue to protect personal rights, *Passel*, 440 S.W.2d at 63, none involved a criminal statute. *See Ex Parte Warfield*, 40 Tex.Crim. 413, 50 S.W. 933, 935 (Tex.Crim.App. 1899) (holding in habeas corpus proceeding that court could enjoin relator from alienating the affections of plaintiff's wife although no property rights were involved); *Hunt v. Hudgins*, 168 S.W.2d 703, 705 (Tex.Civ. App.—Waco 1943, no writ) (explaining that husband seeking to end an "illicit relationship" was entitled to an injunction against his former para-

mour even though no property rights were involved); *Hawks v. Yancey*, 265 S.W. 233, 237 (Tex.Civ.App.—Dallas 1924, no writ) (holding that equity will intervene to protect female from assault and slander by her boyfriend despite the lack of any implication of property rights).

**13.** The personal rights directly threatened in *Passel* were of constitutional magnitude. Thus, if *Passel* is misread as the court of appeals appears to have read it—that a court has jurisdiction to decide whether a statute affects "personal rights" even though no action is anticipated that might affect the exercise of those rights—the two limitations of unconstitutionality and irreparable harm to protected rights are collapsed into one. Rather than being required to prove that the statute is both unconstitutional and that its enforcement would result in irreparable injury, a party would only need to show that the statute is unconstitutional and that its hypothetical enforcement will harm a personal right of constitutional significance. This near tautology means that *any* statute that is unconstitutional, necessarily infringes on a *Passel*-personal right. Once the court satisfies itself that the statute is unconstitutional, it has satisfied the test which is supposed to be the very limit on its ability to declare such statutes unconstitutional. We disapprove of this interpretation of *Passel*.

**14.** Any injunctive relief sought against 21.06 would clearly fail this test as the parties have agreed that 21.06 is not routinely enforced.

not a basis for injunctive relief); *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex.1961) (explaining that injunction should not issue on mere surmise of injury); *Transport Co. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953) (requiring showing of a "probable injury" if respondent not restrained). As we have already noted, there is no allegation that absent an injunction prohibiting enforcement of 21.06 that the statute will be enforced. While we are sympathetic to plaintiffs' argument that nonenforcement deprives them of an adequate remedy at law, as they are deprived of a forum in which to adjudicate their constitutional objections if there are no criminal proceedings in which to raise them, equity jurisdiction does not rise or fall solely on the basis of the adequacy of their remedy at law. Otherwise, a denial of an injunction on the merits because of an adequate remedy at law would be tantamount to a dismissal for want of jurisdiction. That is not the case, however, and neither is it true that a civil court necessarily has equity jurisdiction to pass on a criminal statute simply because the statute is not enforced.

As we explained more than fifty years ago:

An injunction is a remedial writ which courts issue for the purpose of enforcing their equity jurisdiction. In such cases jurisdiction must exist before the writ can issue. In England chancery courts exercise nonjudicial, as well as judicial, powers; but our equity courts possess only judicial powers.... Under our constitution our government is divided into three co-ordinate branches,—that is, into three distinct departments; the legislative, the executive, and the judicial.... From the above it is fundamental that the judicial and executive departments of government are without legislative powers, unless such powers be constitutionally conferred. It is also fundamental that neither the judicial nor the executive branch of the government can create remedies or causes of action.... Under our system there is no such thing as the inherent power of a court, "if, by that, be meant a power which a court may exercise without a law authorizing it."

*Ex Parte Hughes*, 133 Tex. 505, 129 S.W.2d 270, 273 (1939) (quoting *Messner v. Giddings*, 65 Tex. 301, 309 (1886)) (citations omitted).

■ Just as an injunction is a remedial writ that depends in the first instance on the existence of the issuing court's equity jurisdiction, we have held that the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code §§ 37.001–.011 (Vernon 1986 & Supp.1994), is merely a procedural device for deciding cases already within a court's jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit.

■ For the same reasons that equity courts are precluded from enjoining the enforcement of penal statutes, neither this court, nor the courts below, have jurisdiction to render a declaratory judgment regarding the constitutionality of 21.06. The legislature did not intend to enlarge such jurisdiction when it promulgated the Declaratory Judgments Act. *Stecher v. City of Houston*, 272 S.W.2d 925, 928 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.). A civil court simply has no jurisdiction to render naked declarations of "rights, status or other legal relationships arising under a penal statute." *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.); *see also State v. Margolis*, 439 S.W.2d 695, 699 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.) (holding that suit for declaratory judgment will not lie unless proof made of bona fide threat of prosecution).

Finally, the limitation on equity jurisdiction that we affirm today has a pragmatic justification, especially in Texas, where we have separate and distinct jurisdiction allocated by the Texas Constitution to our civil and criminal courts, including two courts of last resort: this court in civil cases and the court of criminal appeals in criminal cases. As was noted in *Roberts v. Gossett*, the prospect of both civil and criminal courts construing criminal statutes

would tend to "hamstring" the efforts of [law] enforcement officers, create confu-

sion, and might result finally in precise contradiction of opinions between the [civil courts] and the Court of Criminal Appeals to which the Constitution has intrusted supreme and exclusive jurisdiction in criminal matters.

88 S.W.2d 507, 509 (Tex.Civ.App.—Amarillo 1935, no writ).

It was because of this concern in *Dearing v. Wright,* 653 S.W.2d 288 (Tex.1983), that this court declined to intervene in a prosecution for possession of marijuana based on the alleged unconstitutionality of Texas' marijuana possession statute. The court observed that if civil courts were to accept jurisdiction, a potential for conflicting decisions, between our civil and criminal courts of last resort on the validity of such statutes, was a very real danger. *Id.* at 290.[15] Indeed, to demonstrate how close the supreme court and the court of criminal appeals have come to conflicting decisions on this very issue, one need only consider the latter court's recent rejection of a criminal defendant's state constitutional challenge, albeit under a different provision of our constitution than that relied upon by the court of appeals to affirm the trial court's judgment. *See Boutwell v. State,* 719 S.W.2d 164, 169 (Tex.Crim.App. 1985) (rejecting an Equal Rights Amendment attack).[16]

The dissent urges adoption of a *Morales* exception to the jurisdictional limitations that bind this court. 869 S.W.2d at 949 (Gammage, J., dissenting). The dissent's exception is triggered only when: (1) there is irreparable injury to property or personal rights, and (2) "where the inadequacy of the remedy at law is clearly demonstrated by evidence of lack of prior enforcement and by a stipulation by the State that enforcement in the near future is unlikely." 869 S.W.2d at 952. The dissent's proposed *Morales* excep-

tion, however, is flawed. First, under item (1), the dissent's harm test is exactly the same as the test derived from a misreading of *Passel,* rejected today by the court. As we have already explained, this test implodes upon itself, for any unconstitutional statute will necessarily impact upon personal rights. *See supra* note 13. Second, under item (2), even the dissent recognizes the unavoidable imprecision in determining at what point a criminal statute can be declared to be "unenforced." Yet the dissent is satisfied that a mere stipulation by the State that "enforcement in the near future is unlikely" is sufficient. Without commenting on whether the Attorney General has either the power or the requisite knowledge to make such a stipulation, such a stipulation cannot be the linchpin of the jurisdiction of this court. *Cf. Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961) ("Formal agreement between parties that collides with plausibility is too fragile a foundation for indulging in constitutional adjudication.").

Our decision today does not, despite the protestations of the dissent, exalt property rights over personal rights. The personal rights of the citizens of this state are protected from infringement by criminal statutes by the criminal courts of Texas. If the harm alleged by a citizen flows not from enforcement of the statute, but rather, from some other cause susceptible to the equity powers of a civil court, then personal rights can serve as a sufficient justification for the granting of such equitable relief. *Passel,* 440 S.W.2d at 63 (holding that the granting of an injunction against enforcement of the school district's rule could be justified with a protection of personal rights). To note that there are also situations in which a party might allege irreparable injury to her *property* rights justifying equitable relief, does not

**15.** Two justices concurred on the basis that although this was a civil, not criminal case, Dearing did not allege irreparable injury to a vested property right caused by the State proceeding with the criminal case. Therefore, they argued, the case should be dismissed for lack of jurisdiction. *Id.*

**16.** The dissent argues that the court of criminal appeals' decision to decline exercising its juris-

diction in this matter renders any comity concerns a nullity. 869 S.W.2d at 949 (Gammage, J., dissenting). But it is the *prospect* that civil courts will get into the business of construing criminal statutes which represents the real danger. Simply because in this case the court of criminal appeals has decided not to exercise its jurisdiction, does not mean that it will decline to exercise its jurisdiction in the future so as to avoid a conflict with a decision from this court exercising jurisdiction that we never had.

exalt one right over another, but simply recognizes that many different rights are afforded protection by Texas courts.

The very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds. The power *of* government emanates from the people's delegation of power *to* government. The checks and balances inherent in our form of government depend upon the judiciary's equanimity and particularly upon our self-restraint. When a court lacks jurisdiction, its only legitimate choice is to dismiss. Accordingly, we reverse the judgment of the court of appeals and remand this case to the district court with instructions to dismiss for want of jurisdiction.

GAMMAGE, Justice, joined by PHILLIPS, Chief Justice, DOGGETT and SPECTOR, Justices, dissenting.

Today this court declares that a court in equity cannot address the constitutional merits of the plaintiffs' claims because vested property rights are not affected. The court also holds that equity jurisdiction does not turn on the inadequacy of a remedy at law. Such reasoning ignores the rule that an equity court's primary concern in enjoining a criminal statute is whether there is irreparable harm. That issue—not whether property is involved—is and should be the overriding question. *State v. Logue,* 376 S.W.2d 567, 570 & 572 (Tex.1964) ("It is the adequacy of the remedy at law that marks off the limitations as well as the jurisdiction of equitable relief.... [T]he requirement of property rights being affected is related to adequacy of remedy at law...."); *City of Dallas v. England,* 846 S.W.2d 957, 959 (Tex.App.—Austin 1993, writ dism'd w.o.j.). The power of a court to assume jurisdiction of a cause on the ground of irreparable injury is the fundamental characteristic of equity jurisdiction. *Sisco v. Hereford,* 694 S.W.2d 3, 7 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.) ("It has long been established that the

inadequacies of the remedy at law is both the foundation of and conversely the limitation on equity jurisdiction."); *Burford v. Sun Oil Co.,* 186 S.W.2d 306, 314 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.) ("[T]he inadequacy of the remedy at law is both the foundation of, and conversely a limitation on, equity jurisdiction."); Joseph R. Long, *Equitable Jurisdiction to Protect Personal Rights,* 33 YALE L.J. 115, 116 (1921) ("[T]he jurisdiction of equity does not properly depend on the nature of the right involved, whether a right of person or of property; the true test of equity jurisdiction is the existence of a justiciable right for which there is not a full, adequate, and complete remedy at law."); 27 AM.JUR.2D *Equity* § 21 (1966).

Nearly a century ago, this court recognized that the proposition that a court of equity will not enjoin a criminal prosecution is subordinate to the general principle that equity will grant relief when there is not a plain, adequate, and complete remedy at law. *City of Austin v. Austin City Cemetery Ass'n,* 87 Tex. 330, 336, 28 S.W. 528, 529 (1894). In *City of Austin,* we concluded that if a statute criminalizes conduct, a party typically has a remedy because that individual can continue to engage in the conduct and assert the statute's unconstitutionality in courts with jurisdiction over criminal matters. *Id.* at 336, 28 S.W. at 530. More importantly, we recognized that there are cases in which there is no pending nor anticipated prosecution but the statute nonetheless injures the party regulated. Accordingly, we determined that in such cases there is no adequate remedy through criminal courts and a court of equity can enjoin enforcement of the statute. To hold otherwise would disregard the fundamental principle upon which such courts are established. *Id.* at 337, 28 S.W. at 530.

Although the injury in *City of Austin* involved a property interest, the decision turned not on that property interest, but on the inability of the party to obtain judicial review of an alleged unconstitutional statute.[1] *See State v. Logue,* 376 S.W.2d at 570 (noting

---

1. Although the plaintiff's problem in *City of Austin* was not lack of enforcement but rather an inability to break the law, the result is the same:

an inability to get into criminal court to test the validity of the law.

that *City of Austin* rested on the premise that unless the courts of equity took jurisdiction, there would be no way ever to test the constitutionality of the ordinance); *Air Curtain Destructor Corp. v. City of Austin*, 675 S.W.2d 615, 618 (Tex.App.—Tyler 1984, writ ref'd n.r.e.) (noting that *City of Austin* applies in cases in which it is highly unlikely that an ordinance may be tested); *City of Dallas v. Dallas County Housemovers Ass'n*, 555 S.W.2d 212, 214 (Tex.Civ.App.—Dallas 1977, no writ) (noting that the threshold requirement to invoke equity jurisdiction of irreparable harm is related to the adequacy of the remedy at law and stating the rule under *City of Austin* that the remedy at law is inadequate where a party is effectively prevented from ever challenging the validity of the statute in a criminal prosecution). A number of cases involving property subsequently came before Texas courts,[2] and *City of Austin* was cited as authority for a court in equity to enjoin criminal prosecution in cases in which an unconstitutional statute irreparably harms a property right.[3] Some courts continued to recognize that property *or* civil rights could be at issue and that the ultimate issue was irreparable harm.[4] Other courts, perhaps because property injuries

were alleged, relied strictly on the property exception.

In 1969, we returned to the issue of the jurisdiction of a court sitting in equity, stating:

It has also been said that courts of equity are concerned only with the protection of civil property rights. Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294. This is not the modern view, and it seems clear to us that the Texas statute is broad enough to authorize the granting of an injunction for the protection of personal rights....

Plaintiffs are not attempting to enjoin prosecution under Article 301d. Apparently no prosecution is threatened or even contemplated.

\* \* \* \* \* \*

The criminal courts cannot determine the meaning and validity of the statute unless a prosecution is instituted, and plaintiffs have no way to attack the rule except by an administrative review or civil action. The civil courts are not powerless to grant relief under these circumstances, and we hold that the trial court erred in dismissing the cause on the ground that it had no jurisdiction to construe and determine the

---

**2.** *See, e.g., Bielecki v. City of Port Arthur*, 12 S.W.2d 976, 978 (Tex. Comm'n App.1929, judgm't adopted) (dance hall); *Townsend v. McDonald*, 149 S.W.2d 1038, 1039 (Tex.Civ.App.—San Antonio 1941, writ ref'd n.r.e.) (fruit); *Shupe v. City of Fort Stockton*, 123 S.W.2d 408, 409 (Tex.Civ.App.—El Paso 1938, no writ) (house); *Hurt v. Oak Downs*, 85 S.W.2d 294, 296 (Tex.Civ.App.—Dallas 1935, writ dism'd) (dog racing operation); *Barkley v. Conklin*, 101 S.W.2d 405, 406 (Tex.Civ.App.—Waco 1937, no writ) (marble machines).

**3.** *See, e.g., Townsend v. McDonald*, 149 S.W.2d 1038, 1039 (Tex.Civ.App.—San Antonio 1941, writ ref'd n.r.e.); *Bielecki v. City of Port Arthur*, 12 S.W.2d at 978.

**4.** *See, e.g., Brazell v. Gault*, 160 S.W.2d 540, 541–42 (Tex.Civ.App.—Amarillo 1942, no writ) ("[G]enerally, courts of equity deal only with *civil* and property rights ... and an injunction will not be granted to restrain officers from ... the prosecution of crime. It is only in rare instances, where it is evident that no adequate legal remedy exists, that the rule will be extended.") (emphasis added); *Roberts v. Gossett*, 88 S.W.2d 507, 510 (Tex.Civ.App.—Amarillo 1935, no writ) (discussing the property requirement and stating that it is but "another way of saying

that as a general rule prosecution ... will not be enjoined unless it appear that the officers are acting without authority of law ... and not then except where *civil* or property rights are involved, for the protection of which no full and adequate remedy at law exists.") (emphasis added).

These cases recognize an exception to the general proposition that equity has no jurisdiction in criminal matters not affecting property. *See also* 27 Am.Jur.2d *Equity* § 57 (1966) ("Matters which do not involve property *or civil* rights, it is said, are beyond the scope of the court's equity jurisdiction, and, therefore, if rights of this character are not called in question, the court may not take cognizance of that which is criminal.") (emphasis added); *Hawks v. Yancey*, 265 S.W. 233, 237 (Tex.Civ.App.—Dallas 1924, no writ) (concluding that Texas courts are not required to search for rights of property on which to base jurisdiction to grant injunctions to protect personal rights, cited with express approval on this point by Associate Justice Ruel C. Walker writing for the court in *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex.1969)); 27 Am.Jur.2d *Equity*.§ 65 (1966) (suggesting a trend in equity to protect personal rights openly rather than pretend that they attach to some property right).

constitutionality of the criminal statute in this proceeding.

*Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63–64 (Tex.1969).[5] This court analyzed the State's argument that courts of equity will not interfere with the ordinary enforcement of a criminal statute unless it is unconstitutional and its enforcement will result in irreparable injury to vested property rights. We concluded the rationale for such a rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. *Id.* at 63. We expanded the exception to personal rights, however, and reversed the trial court's dismissal for lack of jurisdiction because the plaintiffs had no way to test the penal statute because no prosecutions were threatened or even contemplated. *Id.* at 64.

*Passel* was part of a larger trend in which courts discarded the property/personal rights distinction. The notion this court resurrects today—that equity will intervene only when property is at stake—has long fallen into disuse.[6] As another Texas court, cited with approval for that point by Justice Walker writing for this court in *Passel,* observed:

This is, in our opinion, as it should be, because the personal rights of citizens are infinitely more sacred and by every test are of more value than things that are measured by dollars and cents. Such a rule ... makes "the system of equity suitable only to a semisavage society which has much respect for property but little for human life. Our equity jurisprudence does not quite deserve so severe a reproach. It does, indeed, do much for the protection of personal rights, although it has not been willing to acknowledge the fact but has persisted in declaring the contrary."

*Hawks v. Yancey,* 265 S.W. 233, 237 (Tex. Civ.App.—Dallas 1924, no writ) (citations omitted) (concluding that Texas courts are not required to search for rights of property on which to base jurisdiction to grant injunctions to protect personal rights).[7] The court correctly notes that the cases cited in *Passel* as support for "the modern view," such as *Hawks,* did not involve challenges to criminal statutes. But protection of personal and civil rights is also the modern trend in our nation's jurisprudence on the narrower issue of equity jurisdiction over criminal law.[8]

---

**5.** *See also Dreyer v. Jalet,* 349 F.Supp. 452, 466–67 (S.D.Tex.1972), *aff'd without opinion,* 479 F.2d 1044 (5th Cir.1973) (citing *Passel* for the proposition that Texas law sanctions injunctive relief to protect both property and personal rights).

**6.** In many cases, courts have squarely held or have recognized as a principle that equity jurisdiction exists and will be exercised to protect personal rights even when no property right is implicated. *See* 27 AM.JUR.2D *Equity* § 65 (1966); *e.g., Webber v. Gray,* 228 Ark. 289, 307 S.W.2d 80, 83–84 (1957) (following the trend to remedy injuries to personal rights by injunction); *Kenyon v. Chicopee,* 320 Mass. 528, 70 N.E.2d 241, 244–45 (1946) (stating that equity protects personal rights by injunction upon the same conditions upon which it would protect property); *Gluck v. Texas Animal Health Comm'n,* 501 S.W.2d 412, 415 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.) ("[E]quity will interfere when necessary to protect civil or property rights...."); *Neiman–Marcus Co. v. City of Houston,* 109 S.W.2d 543, 547 (Tex.Civ.App.—Galveston 1937, writ ref'd) (holding that equitable relief should not be granted against the enforcement of a penal ordinance unless the ordinance is unconstitutional on its face and its enforcement would constitute an unlawful invasion of property or personal rights).

**7.** The *Hawks* court noted that even the Chancery Courts of England, originators of the restriction that an injunction could not issue except to safeguard property, now freely protect purely personal rights, including reputation. *Id.*

**8.** Several jurisdictions create an exception to the general rule that equity will not interfere with the enforcement of criminal laws, where the law is unconstitutional and its enforcement would result in irreparable injury to property or *personal* rights. *See, e.g., Olan Mills, Inc. v. Panama City,* 78 So.2d 561, 562 (Fla.1955) (reversing the dismissal of a suit to enjoin enforcement of an ordinance taxing transient photographers); *Norcisa v. Board of Selectmen,* 368 Mass. 161, 330 N.E.2d 830, 834–35 (1975) (reversing the lower court's declaration that a penal transient vendor ordinance was unconstitutional and issuing an injunction against a pending criminal prosecution under the ordinance); *Smith v. State,* 242 So.2d 692, 695 (Miss.1970) (in a suit to declare void and enjoin the enforcement of an anti-evolution statute carrying penal sanctions, holding that the plaintiff had stated a cause of action for injunctive relief by alleging the denial of a personal right, to wit, her right to learn); *see also Severns v. Wilmington Med. Ctr., Inc.,* 421 A.2d 1334, 1349 n. 12 (Del.1980) (stating that a "Court of Chancery may enjoin a criminal prosecution, to protect a property right [citation omit-

Today the court not only rewrites *Passel*;[9] it also overturns the driving principle announced in 1894 in *City of Austin*. The court inflicts this damage to its own precedent because, it says, it fears the court will be confronted with untold cases challenging criminal statutes. But the *City of Austin/Passel* remedy applies only in exceptional situations such as the present case—where the statute is alleged to be unconstitutional, where there is irreparable harm to property or personal rights, and where the inadequacy of the remedy at law is clearly demonstrated by evidence of lack of prior enforcement and by a stipulation by the State that enforcement in the near future is unlikely. The paucity of cases meeting this requirement of nearly complete lack of enforcement is reflected by the fact that only twice in the last century have we had occasion to consider this issue of equity jurisdiction over challenges to criminal statutes in the context of a plaintiff who is effectively prevented from asserting the challenge in criminal court. *See City of Austin*, 87 Tex. at 336–37, 28 S.W. at 530; *Passel*, 440 S.W.2d at 64. The court states that the real danger of our assuming jurisdiction here is the prospect that the Court of Criminal Appeals will decide to exercise its jurisdiction in the future and issue an opinion conflicting with ours. But such a prospect exists any time an equity court assumes jurisdiction of a challenge to a criminal statute, even when it does so on the traditional ground of preventing irreparable injury to property rights. The court does not explain why it is not bothered by this same prospect when property rights or administrative rules are involved.[10]

ted] or a personal right" and that a criminal prosecution may be enjoined where it infringes upon some constitutional right); *cf. Gospel Army v. City of Los Angeles*, 27 Cal.2d 232, 163 P.2d 704, 728 (1945) (Carter, J., dissenting) (arguing that even if no injury to property rights is threatened, injunctive relief is appropriate where it is claimed that a criminal statute violates personal rights, meaning one of the personal liberties guaranteed by the constitution, since these are even more precious than property rights).

Other jurisdictions create an exception where there is irreparable harm to property or certain *constitutional* rights. *See, e.g., Rathke v. MacFarlane*, 648 P.2d 648, 653 (Colo.1982) (holding that "before a trial court may enjoin the enforcement of a criminal statute in a preliminary injunction proceeding, the moving party must establish, as a threshold requirement, a clear showing that injunctive relief is necessary to protect existing legitimate property rights or fundamental constitutional rights"); *Hursey v. Town of Gibsonville*, 284 N.C. 522, 202 S.E.2d 161, 166–67 (1974) (reversing the granting of injunctive relief on the grounds that the plaintiffs had not proven injury to a property or constitutional right); *City of Ashland v. Heck's, Inc.*, 407 S.W.2d 421, 423–24 (Ky.Ct.App.1966) (holding that equity may enjoin criminal proceedings where "justified by exceptional circumstances and by the necessity to afford adequate protection to constitutional rights" and determining that an earlier case requiring property rights had been overruled by subsequent case law).

9. Contrary to the court's assertion that *Passel* turned on the attempt to enjoin an administrative rule, the central issue in *Passel* was the same as the one before us today—a civil court's power to determine the constitutionality of a criminal stat-

ute. 440 S.W.2d at 62–63. The administrative rule at issue was based on the statute and its fate depended on the resolution of the constitutional issue. *Id.* at 64 (stating that "the rule, which is based upon the statute, should stand or fall with the statute"). Indeed, the *Passel* court held that "the trial court erred in dismissing the cause on the ground that it had no jurisdiction to construe and determine *the constitutionality of the criminal statute in this proceeding." Id.* (emphasis added).

Apparently, the court here assumes a court's determination that a statute is unconstitutional affects nothing other than rules based on the statute. Rather than explaining why such a decision would not also void the statute, the court instead requires that in each case there be a rule dependent on the statute and that each rule be litigated separately.

10. Texas courts already have developed a policy of harmonizing civil and criminal review of penal statutes and ordinances. *Humble Oil and Refining Co. v. City of Georgetown*, 428 S.W.2d 405, 411–12 (Tex.Civ.App.—Austin 1968, no writ). This court ordinarily considers it a duty to follow a Court of Criminal Appeals' construction of a criminal statute; if refusal to follow the Court of Criminal Appeals would create an intolerable or overly confusing situation, "it is our duty not to refuse … but to follow the ruling of that court." *Shrader v. Ritchey*, 158 Tex. 154, 309 S.W.2d 812, 814 (1958). The Texas Court of Criminal Appeals follows the same policy regarding this court's decisions. *Jernigan v. State*, 166 Tex.Crim. 302, 313 S.W.2d 309, 310 (1958). It is important to note that *in this case, the Court of Criminal Appeals has declined jurisdiction.* This court's citation to *Dearing v. Wright*, 653 S.W.2d 288, 289–90 (Tex.1983), is therefore inapt. In

The rationale for such a rule is readily apparent. Equity courts usually decline to interfere with a criminal prosecution because an individual can assert the unconstitutionality of the statute as a defense in a criminal prosecution. *See City of Austin,* 87 Tex. at 336, 28 S.W. at 530. Sometimes additional harms flow from prosecution. But we require injury to reputation, for example, to be remedied through the criminal courts during prosecution because to allow equity to intervene would prevent prosecution under every criminal statute. Under these circumstances, we say that a party who is prosecuted and can defend and gain an acquittal has an adequate remedy at law. If property rights may irreparably be harmed during some prosecutions, we say we will protect those property rights when the statute is clearly unconstitutional. *See Bielecki v. City of Port Arthur,* 12 S.W.2d at 978. *City of Austin* and *Passel* recognize that sometimes damages accrue even when there is and will be no prosecution, and that these damages can include harm to personal as well as property rights. That is the situation Morales presents us with today. In these infrequent and unusual cases, the fact that there will be no prosecution evidences the lack of an adequate remedy at law because the complaining party is denied an opportunity to argue the unconstitutionality of the statute in the criminal court system. Such were the circumstances in *City of Austin* and *Passel,* creating the unique situation which gives rise to an equity court's jurisdiction. As Justice

Cardozo in 1937 quoted from even earlier cases, " 'Where equity can give relief plaintiff ought not to be compelled to speculate upon the chance of obtaining relief at law.' ... 'The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party.' " *American Life Ins. Co. v. Stewart,* 300 U.S. 203, 214–15, 57 S.Ct. 377, 379–80, 81 L.Ed. 605 (1937) (respectively quoting *Davis v. Wakelee,* 156 U.S. 680, 688, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895), and *Bank of Kentucky v. Stone,* 88 F. 383, 391 (D.Ky. 1898)).

The court confuses harm with prosecution by asserting there is no harm when it means there is no actual or threatened prosecution. Whether prosecution is imminent rather than a mere possibility matters only if the allegations are of anticipated harm rather than already accrued injury. *See Frey v. DeCordova Band Estates Owners Ass'n,* 647 S.W.2d 246, 248 (Tex.1983). Here plaintiffs alleged actual harm beyond the threat of criminal prosecution, as expressly acknowledged by the court of appeals opinion.[11] This court also offers a confusing discussion of lack of jurisdiction because reaching the merits would be an advisory opinion, which is somehow linked to this absence of harm. If there is any need for more than an allegation of harm, it was satisfied in this case. The State *stipulated*[12] that plaintiffs' job choices are limited, that they face discrimination in housing, family, and criminal justice matters, and that they suffer psychological harm to

---

Dearing, the danger of conflicting decisions between our civil and criminal courts was very "real" because, unlike the present case, the appellant was currently under indictment for violating the allegedly unconstitutional statute, and the constitutionality of the statute was pending before the Court of Criminal Appeals in three other causes. *Dearing* does not require that we decline jurisdiction here, because the appellant in *Dearing* had an adequate remedy by appeal through defense of his prosecution.

11. The court of appeals wrote, 826 S.W.2d at 203:

The State does not dispute appellee's assertions that § 21.06 causes harm beyond the threat of criminal prosecution. In fact, the State in the district court stipulated to all of the evidence offered by appellees regarding these harmful consequences of the statute.

12. Stipulations are favored and should be given effect whenever possible. *Johnson v. Swain,* 787 S.W.2d 36, 38 (Tex.1989). When the stipulation is to a legal conclusion—in this case discrimination causing harm—which necessarily rests on several facts, then the effect of the agreement is to stipulate to each fact necessary to establish that conclusion. *Strippelmann v. Clark,* 11 Tex. 296, 298 (1854). Factual stipulations also establish all facts necessarily inferable from the stipulated facts. *Handelman v. Handelman,* 608 S.W.2d 298, 301 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). The Attorney General has broad discretionary power in his conduct of litigation to meet his legal obligations to defend the State. *Terrazas v. Ramirez,* 829 S.W.2d 712, 721 (Tex.1991); *Maud v. Terrell,* 109 Tex. 97, 200 S.W. 375 (1918). No party suggests the stipulations were anything but binding in this case, and the court errs in ignoring the stipulated harm in its jurisdictional analysis.

their relationships because they are labeled criminals by the very existence of the statute. Without in any way reaching the merits (i.e., the constitutionality of the statute), the court must concede the plaintiffs here have established that stipulated harm. Instead of making that admission, the court attempts to impose a threat of prosecution requirement as a predicate to recognizing actual harm.

Other jurisdictions expanding their equity jurisdiction over criminal statutes to encompass the protection of personal rights have not been unduly hampered by the prospect of equity overstepping its bounds.[13] Many of this court's cases clinging to the property rights limitation on equity jurisdiction over criminal statutes do not even state a rationale. *See, e.g., Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894 (Tex.1970); *City of Fort Worth v. Craik*, 411 S.W.2d 541, 542 (Tex.1967); *Crouch v. Craik*, 369 S.W.2d 311, 315 (Tex.1963). Those that do state a rationale—prevention of conflicts between the two high courts—are not applicable to cases such as this involving a clear lack of enforcement, as noted above. *See, e.g., Logue*, 376 S.W.2d 567, 569 (Tex. 1964). To quote Justice Holmes: "It is revolting to have no better reason for a rule of law than that so it was laid down in the reign of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." O.W. Holmes, *The Path of the Law*, 10 Harv. L.Rev. 457, 469 (1897).

Shirking its equitable duty to provide a remedy for a wrong,[14] the court allows the State to insulate its laws from judicial scrutiny. Under the court's analysis, the State may adopt all manner of criminal laws affecting the civil or personal rights of any number of citizens, and by declining to prosecute under them, ensure that no court ever reviews them.

Declining to even *consider* the merits of the pleas for equitable relief before us today could have an impact far beyond the class of citizens immediately affected. By its holding the court effectively denies standing in Texas courts to *any* individual or group of citizens who seek equitable relief under the Texas Constitution, because of an unenforced Texas criminal statute, for the alleged deprivation of *any* personal liberty or civil right which does not also involve what the court may perceive as an adequate vested property interest.

The plaintiffs here are among over a quarter of a million Texas citizens who identify themselves as harmed by the existence of this statute.[15] Today, this court tells these plaintiffs that it will not contemplate granting them a remedy even though the State agreed there *is* harm to their personal rights, absent their also showing harm to a vested property right. Because I believe this is wrong, I dissent.

---

**13.** It is true that most other jurisdictions do not have a bifurcated system such as ours, and therefore do not run the same risk of conflicting decisions from two high courts. However, the risk run in our peculiar judicial system by exercising jurisdiction over causes such as Morales' is minimized by a requirement of clear evidence of lack of prior enforcement and stipulations as to the unlikelihood of enforcement in the near future.

**14.** This court ignores the most important rule of equity—equity will not suffer a right to be without a remedy. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 807 (1956); *Miers v. Brouse*, 153 Tex. 511, 271 S.W.2d 419, 421 (1954) ("The first maxim of equity is that it will not suffer a right to be without a remedy. As Lord Holt early said: 'If the plaintiff has a right, he must of necessity have a means to vindicate and maintain it.... It is a vain thing to imagine a right without a remedy.'") (citations omitted); *Southwest Weather Research v. Duncan*, 319 S.W.2d 940, 944 (Tex.Civ.App.—El Paso 1958) ("[E]quity was created for the man who had a right without a remedy, and, as later modified, without an adequate remedy."), *aff'd*, 160 Tex. 104, 327 S.W.2d 417 (1959); 27 Am.Jur.2d *Equity* § 120 (1966); 34 Tex.Jur.3d *Equity* § 20 (1984).

**15.** The parties stipulated to the scientific validity of several statistical projections, all of which exceed 250,000. These statistics are taken from the affidavits of William Simon, Ph.D. and Gregory M. Herek, Ph.D.