

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-440-CV

DESTRUCTORS, INC.                                      APPELLANT

V.

CITY OF FOREST HILL                                     APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

In three issues, Appellant Destructors, Inc. appeals the trial court's order granting Appellee City of Forest Hill's plea to the jurisdiction. We must determine whether the trial court had subject-matter jurisdiction to enjoin the enforcement of the municipal ordinance at issue. Because we hold that it does not, we affirm.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II.  BACKGROUND

Destructors operates concrete and asphalt recycling plants.  Destructors accepts the materials for free from independent contractor hauling companies hired by governmental entities.  Destructors then crushes and sells the concrete and asphalt to cities, counties, the Texas Department of Transportation, and oil and gas companies for use in new road and drilling pad site foundations.

### A.  The City's Truck Route Ordinances

In 1976, the City adopted an ordinance designating three truck routes within the city limits.  Forest Hill, Tex., Code § 126-212(b) (November 6, 2007).  Aside from these designated truck routes, the City prohibits commercial motor vehicles[2] from using a residential street without either (1) a point of origin or destination within the City; or (2) a City-issued permit.  *Id.* §§ 126-212(a), 126-216–218.  The City's municipal code prohibits a "commercial motor vehicle, truck tractor, trailer, or semitrailer" weighing more than 72,000 pounds from receiving a permit.  *Id.* § 126-278.

### B.  Destructors' Recycling Plant

On October 27, 2008, Destructors leased approximately 15.5 acres just outside the City's eastern boundary, entirely within the City of Fort Worth, and

---

[2] The ordinance defines a commercial motor vehicle as "any motor vehicle designed or used for the transportation of property, not including a passenger bus, passenger automobile, motorcycle, panel delivery truck, or pickup truck." Forest Hill, Tex., Code § 126-211.

began operating a concrete and asphalt recycling facility. The plant is accessed by Esco Drive or Freeman Drive—the two roads form the "Freeman-Esco Loop" within the Fort Worth city limits. Access to the Freeman-Esco Loop is available only via Anglin Drive, a residential street entirely located in the City,[3] south of the City's designated truck routes. The trucks using Anglin Drive to deliver the used concrete and asphalt to Destructors' facility weigh approximately fifteen tons and typically haul a minimum of twenty-five tons per load—for a total approximate weight of 80,000 pounds.[4]

C. The City Enforces Ordinance

Within four days of opening its facility, at least twelve truck drivers delivering used concrete and asphalt to Destructors' plant received citations from the City's police officers for violating the ordinances. Destructors contends the ordinance will put its plant out of business because the independent contractor truck drivers will avoid being ticketed by delivering materials to competing concrete recycling facilities instead of meeting the ordinance's weight limit requirements and applying and paying for a permit from the City.

---

[3] ... The City's eastern boundary is the eastern edge of the right-of-way of Anglin Drive.

[4] ... In its second amended pleading, Destructors does not indicate the approximate weight of vehicles using Anglin Drive to pick up crushed asphalt and concrete from the facility.

D. Procedural Background

Destructors filed suit against the City on October 14, 2008. The City answered on October 30, 2008. The next day, Destructors filed its second amended petition and application for a temporary restraining order, alleging (1) the City illegally took Destructors' property without compensation, violating the Texas Private Real Property Rights Preservation Act; (2) inverse condemnation; (3) nuisance; and (4) equal protection.

The City filed a plea to the jurisdiction asserting three grounds: (1) Destructors failed to exhaust all administrative remedies before seeking injunctive relief; (2) a civil court has no jurisdiction to render naked declarations of "rights, status or other legal relationships arising under a penal statute;" and (3) Destructors failed to affirmatively allege facts showing an irreparable harm to a vested property right. After a hearing, the trial court granted the City's plea by written order without specifying the ground on which the plea was granted.

III. DISCUSSION

On appeal, Destructors contends by its first and fourth issues that the trial court erred by granting the City's plea to the jurisdiction because it has a vested property interest that is threatened by irreparable harm. By its second issue, Destructors contends there was no administrative procedure for it to follow before filing suit against the City. By its third issue, Destructors

4

contends the trial court erred by granting the plea because the City's ordinance is preempted by Texas law, void, and unconstitutional under the Texas Constitution and United States Constitution. Because they are dispositive, we address Destructors' first and fourth issues, contending that the trial court erred by granting the plea to the jurisdiction on the ground that Destructors failed to assert irreparable harm to a vested property interest.

A. Standard of Review

Whether the trial court has subject-matter jurisdiction is a question of law we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

Analysis of whether a trial court has authority to decide a case begins with the plaintiff's live pleadings. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Miranda*, 133 S.W.3d at 226. When the trial court does not specify the basis

5

for its ruling, we must affirm the trial court's judgment if any one of the theories advanced is meritorious. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). To prevail on appeal, then, Destructors must show the trial court could not properly grant the plea to the jurisdiction on any of the grounds asserted by the City. *See Star Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

B. Analysis

Destructors contends that the trial court has subject-matter jurisdiction to determine whether the City's penal ordinance is unconstitutional because the ordinance threatens irreparable injury to Destructors' vested property rights.

1. Civil Trial Court Has Narrow Jurisdiction Over Criminal Statutes

Because Texas has a bifurcated system of criminal and civil jurisdiction, the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. *State v. Morales*, 869 S.W.2d 941, 945 (Tex. 1994). However, an equity court possesses a narrow jurisdictional power to decide a matter regarding a criminal statute:

> A civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights.

6

*Id.* at 942; *City of Argyle v. Pierce*, 258 S.W.3d 674, 681 (Tex. App.—Fort Worth 2008, no pet.).

Here, the City's ordinances make it unlawful to operate any truck or commercial motor vehicle "on a public street in [Forest Hill] without a business destination or point of business origin within the corporate limits of the city except upon streets designated as truck routes or commercial delivery routes . . . . without first obtaining a [City] permit to do so." Forest Hill, Tex., Code §§ 126-212, 126-216—217, 126-271, 126-273. Because of the term "unlawful," and the authority granted to the City's police department to enforce the ordinance, this is a penal ordinance. *Id.* § 126-246; *see Morrow v. Truckload Fireworks, Inc.*, 230 S.W.3d 232, 237 (Tex. App.—Eastland 2006, no pet.) (finding a penal ordinance exists when no ancillary administrative actions, such as modifying an individual's salary, can be taken or threatened by violating the ordinance).

2. Jurisdiction Over Criminal Statutes Requires Harm to Property Rights

Civil equity courts have no jurisdiction to enjoin the enforcement of criminal statutes in the absence of irreparable harm to vested property rights. *See Morales*, 869 S.W.2d at 943. Property rights are created and defined by state law. *Reese v. City of Hunter's Creek Vill.*, 95 S.W.3d 389, 391 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 29 (Tex. App.—Austin 1999, no pet.)). A person's

7

property interests include actual ownership of real estate, chattels, and money. *Id.* Property owners do not have a constitutionally protected vested right to *use* real property in any certain way, without restriction. *City of La Marque v. Braskey*, 216 S.W.3d 861, 862 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972)); *Hang On III, Inc. v. Gregg County*, 893 S.W.2d 724, 726 (Tex. App.—Texarkana 1995, writ dism'd by agr.) (holding that property owner did not have a vested property right in operating a sexually-oriented business on that property).

In *City of La Marque*, Braskey operated a cat shelter on property she owned within 100 feet of three residences. 216 S.W.3d at 862. The City of La Marque passed an ordinance prohibiting the operation of a kennel within 500 feet of a dwelling. *Id.* Braskey sought an injunction from the trial court to prevent the enforcement of the ordinance against her, which she claimed would result in her facility being closed. *Id.* Because Braskey's asserted harm concerned a particular use of her property, which is not a constitutionally protected vested right, the civil trial court did not have jurisdiction to hear Braskey's lawsuit. *Id.* at 864.

Destructors attempts to distinguish the present case from *City of La Marque* by arguing its holding only applies to zoning ordinances, not traffic ordinances. However, Destructors cites no authority for its argument and we see no reason the two types of ordinances should be treated differently in this

8

instance. Similar to Braskey's claim in *City of La Marque*, Destructors' pleaded injury relates only to the particular use of the leased property, as a concrete recycling plant, not the right to use the property. Such an allegation is not a threat of an irreparable injury to a vested property right as is required to grant the trial court subject-matter jurisdiction. *See Morales*, 869 S.W.2d at 945, n.8; *City of LaMarque*, 216 S.W.3d at 864.

Citing *Passel v. Fort Worth Indep. Sch. Dist.*, Destructors contends that the trial court has jurisdiction to protect its personal rights[5] from the ordinance's unconstitutional application. 440 S.W.2d 61 (Tex. 1969). In *Passel*, injunctive relief was sought solely to protect personal rights—the right of free and private association—by preventing administrative enforcement of an administrative regulation adopted for the purpose of implementing a statute. *Id.* at 64. In *Morales*, the Texas Supreme Court clarified its holding in *Passel*, stating that a trial court may have subject-matter jurisdiction and grant an injunction to protect personal property rights when a plaintiff complains about a rule and does not seek a naked declaration of a penal statute's unconstitutionality. 869 S.W.2d at 946. Here, Destructors is not attempting to prevent enforcement of an administrative regulation or rule; rather it is seeking a naked declaration of a penal ordinance's unconstitutionality. A personal right cannot uniformly be

---

[5] ... Destructors does not identify or explain the personal rights needing protection.

substituted for a property right and thereby expand a civil court's equity jurisdiction over criminal statutes or ordinances. *See id.*

### 3. Jurisdiction Requires the Ordinance to Operate Against Destructors

Destructors alternatively argues that the trial court has jurisdiction because it will never be prosecuted under the City's ordinance and has no ability to challenge the ordinance in criminal court. Destructors cites *City of Austin v. Austin City Cemetery Ass'n* for the proposition that there are cases in which there is no pending or anticipated prosecution, but that a civil court can grant an injured party an injunction to prevent the enforcement of a penal ordinance. 28 S.W. 528 (Tex. 1894) However, in *City of Austin*, the challenged ordinance operated against both a business and its customers. *Id.* Here, the City's ordinance does not ban the possession or transportation of concrete or asphalt or make Destructors liable for any customer transporting materials to or from Destructors' plant without a city permit. Moreover, as Destructors admits, the ordinance cannot be enforced against it because the plant is not in the City's limits and because Destructors neither owns nor hires trucks to transport the materials. If a party faces no prosecution under a challenged ordinance, the ordinance has no *in terrorem* effect. *Morales*, 869 S.W.2d at 944, n.7. Because the ordinance in this case cannot be enforced against Destructors, *City of Austin* does not apply.

### 4. Destructors Failed To Establish Jurisdiction

Construing the pleadings liberally in favor of Destructors, it failed to establish the civil equity court's subject-matter jurisdiction because it did not identify an irreparable injury to vested property rights. Destructors' first and fourth issues are overruled.

Because we conclude that the trial court lacked jurisdiction absent irreparable injury to vested property rights, we need not address Destructors' second issue that no administrative procedures exist for Destructors to follow before filing suit against the City. *See* Tex. R. App. P. 47.1. And, because civil equity courts have no jurisdiction to enjoin the enforcement of criminal statutes in the absence of irreparable harm to vested property rights, we do not reach Destructors' third issue that the City's ordinance is preempted by Texas law and unconstitutional under the state and federal constitutions. *See id.*; *Morales*, 869 S.W.2d at 943; *City of Houston v. Guthrie*, No. 01-08-00712-CV, 2009 WL 5174258, at *13–14 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that because a lessee's rights do not exceed those of the property owners, lessees did not have a constitutionally protected right to use the property in any certain way, without restriction, and could not establish the threat of an irreparable harm to a vested property interest).

11

IV.  CONCLUSION

Accordingly, we affirm the trial court's order granting the City's plea to the jurisdiction.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: May 13, 2010