

# NUMBER 13-20-00199-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **BOARD OF ADJUSTMENTS FOR THE CITY OF SAN ANTONIO AND THE CITY OF SAN ANTONIO** | **Appellants,** |
| **v.** | |
| **ARTURO AND ELIZABETH LOPEZ** | **Appellees.** |

### On appeal from the 45th District Court
### of Bexar County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellants the City of San Antonio (the City) and its Board of Adjustments (BOA) appeal the trial court's denial of its plea to the jurisdiction. By three issues, appellants assert that the trial court erred in denying its plea because: (1) appellees Arturo and Elizabeth Lopez failed to exhaust their administrative remedies, barring the trial court's jurisdiction to (a) grant the Lopezes' writ of certiorari and (b) hear the Lopezes' inverse

condemnation and unlawful taking claims; (2) the trial court is without "jurisdiction to stay another court's docket of criminal and civil administrative cases," and (3) the trial court lacks jurisdiction to order appellants "to stop investigating and citing persons for committing crimes." We affirm.[1]

## I.    BACKGROUND

The Lopezes own four parcels of real property which are the subject of this dispute. They began operating a cement manufacturing plant on the property in 1995. A floodplain runs through the property.

In 1996, the City annexed the property and adopted a new zoning ordinance. Under the new zoning ordinance, the property is in a temporary single-family residential district. The new zoning ordinance does not, as a matter of right, allow the operation of a cement manufacturing plant, or any similar commercial assembly use, in a temporary single-family residential district. Therefore, in 2003, the City issued the Lopezes a certificate of occupancy for "River City Ready Mix," as a "cement batching plant and the ancillary use of a small truck mechanic repair shop." In 2004, the City granted the Lopezes non-conforming use rights. This allowed the Lopezes to continue to operate their business specifically as a cement manufacturing plant despite the new zoning designation which would have otherwise prohibited this type of industrial use.

In January 2018, the City notified the Lopezes of several alleged violations regarding the floodplain. On January 30, 2018, the City and the Lopezes entered into a

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §73.001.

compliance agreement regarding the alleged violations; the Lopezes were to remove concrete and obstructions from the floodplain and restore the property to correct the alleged violations.

From January 2018 to March 2018, the City issued the Lopezes over two hundred citations for violations of the City's code, namely, failure to obtain a permit, unpermitted use, and failure to obtain a certificate of occupancy. On June 19, 2018, the City revoked the Lopezes' non-conforming use permit and the certificate of occupancy. As a result, the Lopezes were ordered to cease all business operations on the property. The Lopezes reapplied for the same permits, but the City denied their application.

On December 17, 2018, the Lopezes appeared before the BOA to contest the termination of their non-conforming use rights. While the Lopezes requested that the BOA continue their non-conforming use privileges, the City argued against it. Both sides presented evidence supporting their positions. Having heard and considered all the evidence and testimony at the hearing, the BOA ruled in favor of the City's decision to terminate the Lopezes' non-conforming use rights.

The Lopezes appealed the BOA's decision on January 24, 2019, via writ of certiorari and requested that the trial court reverse the BOA's affirmance of the City's decision. The Lopezes included additional claims for inverse condemnation and unconstitutional taking without just compensation. They also sought injunctive relief to prevent the closure of their business and to prevent the prosecution of numerous civil and criminal violations. Thereafter, the Lopezes requested that the City's rezoning commission rezone the property. Meanwhile, the City granted them a limited temporary

certificate of occupancy thereby allowing the Lopezes to continue to conduct their business while the rezoning application process unfolded, which would expire at the end of February.

In February, following numerous extensions and delays in the rezoning application process, the City did not renew the Lopezes' temporary certificate of occupancy. On February 28, 2020, the Lopezes combined their writ of certiorari with a request for a temporary restraining order and temporary injunction.[2] The Lopezes alleged that the City was: (1) threatening irreparable harm by terminating their nonconforming use rights; (2) terminating their ability to operate their businesses; (3) and harming their business and financial reputation through the prosecution of numerous civil and criminal citations.

Appellants filed a plea to the jurisdiction asserting three grounds: (1) the Lopezes failed to cite a statute expressly allowing for injunctive relief; (2) the Lopezes failed to litigate their appeal of the BOA's determination such that the trial court must dismiss the separate claims for injunctive relief; and (3) the trial court did not have authority to order a criminal court to abate the prosecution of cases set before it. Appellants did not attach any evidence of its own nor make any other jurisdictional arguments.

The Lopezes amended their petition, attaching evidence responding to the specific allegations made by appellants and included claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution. Following a hearing, the trial court denied appellants' plea. This appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN.

---

[2] The trial court signed a temporary restraining order on February 28, 2020. However, the parties agree that a temporary injunction hearing was not held. The parties discuss the temporary restraining order and a temporary injunction in their briefs; however, there is currently no temporary injunction or restraining order in place. Therefore, we do not address it in our analysis.

4

§ 51.014(a)(8) (permitting the interlocutory appeal of an order denying a plea to the jurisdiction by a governmental unit).

## II. STANDARD OF REVIEW & APPLICABLE LAW

Governmental immunity[3] deprives a trial court of jurisdiction over lawsuits in which the State's political subdivisions have been sued unless the State consents to suit by waiving immunity. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Therefore, governmental immunity is properly asserted in a plea to the jurisdiction. *Id.* at 225–26. A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction over a pleaded cause of action. *Miranda*, 133 S.W.3d at 226. Subject-matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff has met its burden to allege facts affirmatively demonstrating the court's jurisdiction to hear the cause. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, we consider the relevant evidence submitted." *Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Mission*

---

[3] As a political subdivision, appellants are generally protected from suit by governmental immunity. *See City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014).

5

*Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). "The analysis then 'mirrors that of a traditional summary judgment.'" *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Garcia*, 372 S.W.3d at 635); *see* TEX. R. CIV. P. 166a(c). That is, "[i]nitially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Garcia*, 372 S.W.3d at 635. "If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id*. We take as true all evidence favorable to the nonmovant plaintiff and "indulge every reasonable inference and resolve any doubts in the plaintiff's favor." *Douglas*, 544 S.W.3d at 492; *see Miranda*, 133 S.W.3d at 226. If the relevant evidence is undisputed or if the plaintiff fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Garcia*, 372 S.W.3d at 635; *see Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798–99 (Tex. 2016) (op. on reh'g).

### III.    ADMINISTRATIVE REMEDIES

By their first issue, appellants argue the trial court lacks subject-matter jurisdiction over the writ because the Lopezes failed to exhaust their administrative remedies by continuing to "pursue rezoning" making "it untimely to litigate [non-conforming use] privileges at this moment."

### A.    Writ of Certiorari

#### 1.    Applicable Law

"The legislature has expressly provided a means for challenging an action taken by a city's zoning [BOA]" by filing a verified petition for writ of certiorari under Local

6

Government Code § 211.011 in the trial court. *W. Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ); *see* TEX. LOC. GOV'T CODE ANN. § 211.011(a). The petition must be presented within ten days after the date the decision is filed in the BOA's office. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(b). On presentation of the petition, the court may then grant a writ of certiorari directed to the BOA to review its decision, *id.* § 211.011(c), and, if granted, the BOA must make a verified return and state the pertinent and material facts that show the grounds of the decision under appeal. *Id.* § 211.011(d).

As an administrative remedy the certiorari requirement must be exhausted before BOA decisions may be challenged in the courts. *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.). The exhaustion-of-administrative-remedies rule requires that a plaintiff pursue all available remedies within the administrative process before seeking judicial relief. *Murphy v. City of Galveston*, 557 S.W.3d 235, 241 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The failure to do so deprives the trial court of jurisdiction to decide the case. *Id.* at 241–44.

## 2. Discussion

The parties dispute whether the Lopezes have exhausted their administrative remedies as required by § 211.011. For the first time on appeal, appellants claim that the Lopezes' writ of certiorari is not ripe for review because they failed to exhaust their administrative remedies by applying for rezoning of the property via the City's zoning commission.[4] Appellants further advance their new argument by stating that the Lopezes

---

[4] We must consider all appellants' immunity arguments on appeal even if they raised other

7

"must either finish the rezoning process or abandon it," and because they "have not abandoned the rezoning remedy," they cannot show irreparable harm. In other words, it is improper for the trial court to grant the writ of certiorari while the rezoning administrative remedy is still pending because the writ is not ripe for litigation. However, appellants cite no authority, and we find none, to support its contentions that (1) a plaintiff must seek the rezoning of their property as an administrative remedy before pursuing review by writ of certiorari,[5] or (2) by not abandoning the rezoning remedy, the Lopezes cannot show irreparable harm. *See* Tex. R. App. P. 38.1(i). Section 211.011 contains no such requirements. *See* Tex. Loc. Gov't Code Ann. § 211.011 (providing that a person aggrieved by the BOA's decision must present a verified petition to the trial court within ten days of the BOA's decision stating the decision of the BOA was illegal).

According to the supreme court, "[o]nce a party files a petition within ten (10) days after a [BOA] decision, the court has subject matter jurisdiction to hear and determine a claim." *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 & n.3 (Tex. 1993) (per curiam); *see Tellez v. City of Socorro*, 226 S.W.3d 413, 414 ("The procedures for challenging a [BOA]'s decision are rather unique. The Local Government Code requires such challenges to be filed within ten days after a board's decision . . . and to be initiated by writ of certiorari directed to the board . . . ."). Similarly, the Fourth Court of Appeals stated that the administrative remedies provided for in the local government

---

jurisdictional arguments in the trial court. *See Rusk State Hospital v. Black,* 392 S.W.3d 88, 95 & n.3 (Tex. 2012).

[5] Appellants argue the Lopezes "could: (1) contest the decision to revoke the [non-conforming use] privileges to the [BOA] . . . and/or (2) go through the process to rezone the property with the Zoning Commission."

code must be exhausted before appealing a BOA decision to the trial court—the court did not reference the rezoning process. *See City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied). It is undisputed that the Lopezes filed their petition within ten days after the BOA's decision, thereby conferring jurisdiction on the trial court to hear and decide the case. *See Tellez*, 226 S.W.3d at 414 ("Jurisdiction exists "'[o]nce a party files a petition within ten (10) days after a zoning board decision . . . .'") (citing *Davis,* 865 S.W.2d at 942).

In fact, in their plea to the jurisdiction, appellants conceded that "[t]he <u>only</u> means of obtaining judicial review of the BOA decision is to file a verified petition setting forth the illegality of the order and requesting the issuance of a writ of certiorari to obtain the record of the BOA proceeding," and that rezoning "does not fit into a statutory scheme in which a party must go through . . . before litigation may commence." We find no authority that would preclude the writ of certiorari when rezoning is sought. Therefore, we cannot conclude that the Lopezes were required to abandon their pursuit of rezoning to exhaust their administrative remedies. Accordingly, we reject appellants' argument that the Lopezes failed to exhaust their administrative remedies by pursuing a rezoning application such that it is a jurisdictional bar to their writ of certiorari.

**B.      Unlawful Taking Claim**

Next, appellants claim the Lopezes cannot bring forth an unlawful taking claim in the trial court while seeking rezoning. Specifically, appellants claim "a party asserting a taking must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit." Appellants' only challenge to the trial court's jurisdiction over the

9

Lopezes taking claim is that the claim is not ripe for adjudication because "the administrative process [must] be finished before [the taking claim] may be pursued." Appellants maintain that because the process of rezoning is currently pending, the Lopezes have not exhausted their administrative remedies; therefore, the trial court lacks jurisdiction of the takings claim.[6]

Again, the Lopezes did not fail to exhaust their administrative remedies by seeking rezoning. Several courts, including the Fourth Court of Appeals, have expressly rejected this argument, holding that, "[w]here a constitutional taking issue is brought, it can be considered even though other claims are dismissed for failure to exhaust administrative remedies under [§] 211.011 of the Texas Government Code." *Lamar Corp.,* 270 S.W.3d at 613; *Lindig v. City of Johnson City*, No. 03-08-00574-CV, 2009 WL 3400982, at *10 (Tex. App.—Austin Oct. 21, 2009, no pet.) (mem. op.) (finding that a trial court can consider constitutional violations even though other claims are dismissed for failure to exhaust administrative remedies because "under the unique review procedures of [§] 211.011, the only question that may be raised by a petition for writ of certiorari is the legality of the board's order"); *Centeno v. City of Alamo Heights,* No. 04-00-00546-CV, 2001 WL 518911, at *3 (Tex. App.—San Antonio May 16, 2001, no pet.) (mem. op.); *see also Hitchcock v. Bd. of Trustees, Cypress–Fairbanks Indep. Sch. Dist.,* 232 S.W.3d 208, 219 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In fact, in *Lindig*, the

---

[6] The Lopezes do not allege a physical taking of the property but instead allege that the City has intentionally taken their vested property right to use the property as a cement business without adequate compensation. Accordingly, the Lopezes have alleged a regulatory taking based on an unreasonable interference with their right to use and enjoy their property. *See Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 576–77 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

court of appeals, relying on *Davis*, held that "even assuming without deciding that the [plaintiffs] were required to exhaust their administrative remedies under the local government code in order to bring a taking claim against the City, the record shows that they have done so" because the plaintiffs filed a writ of certiorari in the trial court within ten days of the BOA's decision. *Lindig*, 2009 WL 3400982, at *10; *see Davis,* 865 S.W.2d at 942 & n.3. We conclude that the Lopezes exhausted their administrative remedies under the local government code as they filed a writ of certiorari in the trial court within ten days of the BOA's decision. *See Lindig*, 2009 WL 3400982, at *10; *see also Davis,* 865 S.W.2d at 942 & n.3. We overrule appellants' first issue. *See Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 172 (Tex. 2004) (providing that a party may obtain judicial review of an administrative action if it adversely affects a vested property right or otherwise violates a constitutional right).

## IV.   *MORALES*

By their second and third issues, which we address together, appellants assert the trial court erred in denying its plea because the trial court does not have "jurisdiction to stay another court's docket of criminal and civil administrative cases."[7]

---

[7] As a sub-issue, appellants claim that the Lopezes "federal constitutional claim for a 14th Amendment violation under 42 U.S.C. 1983" fails because the Lopezes "are pursuing administrative remedies" and therefore "it is not ripe for the state court to consider these [federal] allegations at this time." Thus, appellants' argument, again, is contingent on whether the Lopezes exhausted their administrative remedies. However, we previously decided that the Lopezes did not fail to exhaust their administrative remedies. Nonetheless, "in at least some circumstances courts may 'consider the federal and state takings claims together, as the analysis for both is complementary.'" *HS Tejas, Ltd. v. City of Houston*, 462 S.W.3d 552, 557 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012)). Thus, we overrule appellants' sub-issue.

11

## A.    Applicable Law

Regarding the trial court's authority to enjoin the enforcement of a criminal or civil statute, in *State v. Morales*, the Texas Supreme Court stated:

> [A] civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights.

869 S.W.2d 941, 942 (Tex. 1994). Thus, under *Morales*, plaintiffs such as the Lopezes must first challenge the constitutionality of the penal statute, and second, prove irreparable injury to a vested property right. If either of the factors is not satisfied, the trial court has no jurisdiction to enjoin the proceeding. *See id.* at 942. We examine each factor in turn.

## B.    First Prong of *Morales*

Relying on authority that predates the year 1952 to support its position, appellants challenge the Lopezes pleadings in the trial court by asserting they: (1) "have not pled any extraordinary circumstance which would taint [the City's] municipal court or otherwise necessitate its exclusion from considering these criminal cases on its dockets," and (2) "have not pled any facts which would show a right for [the Lopezes] to not be held accountable for breaking the law, just like any other property owner." According to appellants, the Lopezes are challenging the City's code "that each day that the violation continues after notice, constitutes a new violation," and that this "is of universal practice among municipalities." Properly "constru[ing] the pleadings in favor of the party asserting jurisdiction," *Rusk State Hosp.*, 392 S.W.3d at 96, we disagree.

12

First, appellants misinterpret the Lopezes' complaint because in their pleadings, the Lopezes are not challenging the constitutionality of the ordinance that allows for daily citations. As previously stated, the Lopezes complain of the unconstitutional manner in which the City is applying the code—the City is actively preventing the Lopezes from remedying the alleged violations while simultaneously citing them:

> [T]he City's actions in issuing excessive civil and criminal duplicate citations with potential fines in the hundreds of thousands, while simultaneously preventing any corrective or remedial measures amount to an unconstitutional application of City Code provisions and prevent [the Lopezes] from receiving due process under the law in violation of U.S.C.S. Const. Amend. 5 and U.S.C.S. Const. Amend. 14.

In support of their allegations, they incorporated the facts alleged in their petition, including the following: the City had no zoning ordinance that would prohibit the operation of their business when their rights vested in 1995; the City subsequently adopted an ordinance prohibiting the operation of their business on the property; the City has since revoked the Lopezes non-conforming use rights; the BOA subsequently terminated the Lopezes' non-conforming use rights; the City issued over 200 citations within three months while demanding the Lopezes obtain multiple permits and certificates of occupancy which the City admitted "was impossible for the [Lopezes] to do given the holds on the property accounts placed by the City"; the City issued excessive civil and criminal citations with protentional fines in the hundreds of thousands while denying the Lopezes an opportunity to resolve the alleged violations; and the City refused to lift holds on the property.

Construing the Lopezes' pleadings liberally in favor of jurisdiction, looking to the Lopezes' intent, and accepting the allegations in the pleadings as true, we conclude that

their petition adequately challenged the constitutionality of the City's application of its ordinances and thereby met the first requirement under *Morales. See id.* at 96 (providing that we must "construe the pleadings in favor of the party asserting jurisdiction"); *HS Tejas, Ltd. v. City of Houston*, 462 S.W.3d 552, 558 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("As a safeguard, we therefore must construe the petition in favor of the party invoking the court's jurisdiction and review the entire record to determine whether any evidence supports that assertion."). We next decide whether the Lopezes met the second prong of *Morales*—whether they can prove an irreparable injury to a vested property right. *See Morales*, 869 S.W.2d at 942.

## C.    Second Prong of *Morales*

By what we construe as a challenge to the existence of jurisdictional facts, appellants assert that the Lopezes "cannot show that they suffered harm at this time." *See Miranda*, 133 S.W.3d at 226–27 (distinguishing a plea to jurisdiction challenging the plaintiff's pleadings from a plea challenging the plaintiff's alleged jurisdictional facts on which the trial court must consider evidence relevant to a jurisdictional dispute). We consider the evidence submitted by the parties to address the jurisdictional issues raised in light most favorable the Lopezes. *See id.* at 227–28.

### 1.    The Pleadings

In their pleadings, the Lopezes alleged that:

[t]he City's actions resulted in such unreasonable interference with [their] right to use and enjoy their property, including causing a severe economic impact of the value of the property, and interference with the distinct investment-backed expectations of the property considering [their] decades use of the property for the same business operations that started prior to the City's annexation.

14

The Lopezes claimed they invested years of time, effort, and money to secure the plant site, complied with various state requirements, licenses, and certifications, and invested capital and resources to run their business, which serves as the livelihood of approximately fifty families. *See Schrock v. City of Baytown*, 623 S.W.3d 394, 413 (Tex. App.—Houston [1st Dist.] 2019, pet. granted) ("[R]elevant to the economic-impact inquiry is the diminution in the value of the property brought on by the City's regulation; lost profits and lost investment suffered by [the plaintiff] because of the City's regulation; [the Plaintiff's] ability, or lack thereof, to continue renting the property because of the City's regulation; and whether the property had a proven, profitable use at the time."); *see also Electro Sales & Servs., Inc. v. City of Terrell Hills*, No. 04-17-00077-CV, 2018 WL 1309709, at *7 (Tex. App.—San Antonio Mar. 14, 2018 pet. denied) (mem. op.) (holding that allegations of the City's denial of a rezoning request "denied [the plaintiffs] all economically viable use of the middle space or unreasonably interfered with [the plaintiffs] right to use and enjoy the property" was a viable regulatory taking claim). The Lopezes further alleged that the closure of their cement business would jeopardize many of their pending contractual obligations, causing them to "lose millions of dollars in business" and "suffer irreparable harm." *See Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 681, 677 (Tex. 2004) ("[L]ost profits are clearly one relevant factor to consider in assessing the value of property and the severity of the economic impact of rezoning on a landowner."). Additionally, they pleaded that the loss of their non-conforming use privilege renders their property useless because its use is strictly for commercial and industrial

15

operations thereby "devaluing [it] so severely" as a residential property. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) (explaining that "[t]he existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation."). We conclude that the Lopezes' pleadings sufficiently allege how their property is circumscribed by the City's actions (i.e., they cannot operate their business), as well as the harm (i.e., loss of income and loss of property value). *See Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (recognizing a plaintiff has a narrow vested—i.e., complete, noncontingent—right when a new law restricts an existing commercial use of a property).

### 2. The Evidence

To support these allegations, the Lopezes submitted evidence for the trial court to consider including: (1) the certificate of occupancy for "Ready Mix Cement Plant Truck Repair & Batching Plant," (2) maps of the property, including aerial views of their business (3) appraisal values of the property, (4) documents evidencing the operation of their business, such as bills under the names of A & E Lopez Construction and C & K Land Moving, Inc. dated as early as 2003, (5) the 2018 application for non-conforming use rights, (6) permits from the Texas Commission on Environmental Quality, and (7) the City's denial of the non-conforming use rights based on "the illegal expansion of the use" and "the failure to obtain building permits and certificates of occupancy," among other documents. *See Miranda*, 133 S.W.3d at 228 ("If evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the

16

jurisdiction, and the fact issue will be resolved by the fact finder."); *City of Grapevine v. Muns*, ___S.W.3d ___, No. 02-19-00257-CV, 2021 WL 3419675, at *13 (Tex. App.—Dallas Aug. 5, 2021, no pet.) ("The Homeowners did not simply *plead* lost profits, though; they presented supporting evidence—evidence of the type that a trial court can consider in a regulatory-takings claim," and is thus some evidence of an economic impact.); *see Vill. of Tiki Island*, 463 S.W.3d at 579 (providing that evidence of value taken from the property as compared to the value remaining in the property is some evidence of the "economic impact"). We believe the jurisdictional evidence submitted by the Lopezes raises a fact issue as to whether appellants' application of its ordinance threatens an irreparable injury to a vested property right. *Vill. of Tiki Island*, 463 S.W.3d at 587 (analyzing whether a short-term rental (STR) owner had proved an irreparable injury to a vested right necessary to support an order temporarily enjoining an ordinance banning STRs and concluding the STR owner had a narrowly vested right to continue operating an existing STR after the city passed an ordinance banning STRs but grandfathering in existing STRs).

In its brief, appellants merely assert that "the citations the [Lopezes] complain of are for violations such as unpermitted outside storage; building various physical structures without permits, such as the unpermitted construction of a new office building and the unpermitted construction of a new processing plant[;] [and] the unauthorized outside placement of trash and debris." But appellants have presented no evidence of these alleged "constant" violations. *See Miranda*, 133 S.W.3d at 228 (providing that the governmental unit must assert and support with *evidence* the trial court's lack of subject

17

matter jurisdiction). The burden was on appellants to present evidence establishing that the trial court lacks jurisdiction as a matter of law. *See id.*

**D.    Summary**

We conclude that the Lopezes pleaded facts which challenged the constitutionality of the City's application of its ordinances and thereby met the first requirement under *Morales.* Furthermore, the Lopezes' pleadings sufficiently alleged how their property was circumscribed by the City's actions, and they presented jurisdictional evidence raising a fact issue as to whether the City's application of its ordinance threatened an irreparable injury to a vested property right—issues still to be determined by the factfinder. Because the Lopezes' pleadings met both prongs of *Morales*, we conclude that the Lopezes invoked the trial court's subject matter jurisdiction. *See Morales*, 869 S.W.2d at 942; *see also Miranda*, 133 S.W.3d at 226–27. We reject appellants' argument that the trial court did not have "jurisdiction to stay another court's docket of criminal and civil administrative cases." Accordingly, the trial court did not err in denying appellants' plea to the jurisdiction. *See Garcia*, 372 S.W.3d at 637 (providing that a plaintiff generally will not be required to marshal evidence and prove a claim just to overcome a plea to the jurisdiction); *City of Grapevine*, 2021 WL 3419675, at *14 (concluding the trial court did not err in denying appellants' plea to the jurisdiction because "fact issues exist regarding the . . . Ordinance's economic impact on the Homeowners' properties and the reasonableness of the Homeowners' investment-backed expectations"). We thus overrule appellants' second and third issues.[8]

---

[8] In another sub-issue, appellants argue that "[u]nder the Uniform Declaratory Judgment Act notice

18

## V. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA<br>
Justice

Delivered and filed on the
27th day of January, 2022.

---

is necessary to the State Attorney General's Office" in a "suit alleging a law is unconstitutional." However, the Lopezes do not allege the City's ordinance is unconstitutional but rather challenge the City's application of the City's code. We overrule the appellants' sub-issue.